**UNITED STATES, Plaintiff,**

v.

**Frank SMITH, Defendant.**

**No. CR–90–504.**

United States District Court,
E.D. New York.

Jan. 29, 1993.

Michael Considine, Asst. U.S. Atty., Brooklyn, NY and Henry J. Sadowski, Regional Counsel, Federal Bureau of Prisons, Philadelphia, PA, for plaintiff.

Richard A. Rehbock, New York City, for defendant.

GLASSER, District Judge:

By this motion, the Federal Bureau of Prisons requests this court to clarify its July 17, 1992 Judgment and Commitment order sentencing defendant Frank Smith to a term of federal incarceration to be served prior completing his state sentence. The precise issue presented is whether a federal court may interrupt a state term of imprisonment to recommend that the state prisoner first serve a subsequently imposed federal sentence. Because the mechanism by which a federal court orders production of a defendant for the purpose of prosecution—a federal writ of *habeas corpus ad prosequendum*—merely effects a "loan" of that defendant, a federal court lacks the power to interfere with the original state sentence. Once the federal prosecution is complete, the defendant must be returned to the state institution in which he was incarcerated initially. Any consecutive federal sentences do not commence until the prisoner completes service of his state sentence and is delivered into federal custody.

## FACTS

In May of 1989, the Supreme Court for the County of New York imposed a fifteen-years-to-life sentence on defendant Frank Smith for a narcotics trafficking conviction. On December 12, 1990, this court issued a writ of *habeas corpus ad prosequendum* to the Warden at Shawamgumk Correctional Facility—the New York State facility where defendant was incarcerated; that writ ordered the United States Marshal to produce Smith for prosecution under a federal indictment. Smith subsequently entered into a written agreement with the United States government by which he pleaded guilty to two counts of superseding information charging him with conspiring to burglarize Federally insured banks in violation of 18 U.S.C. § 371. The plea agreement provided that the government would not "oppose a request by FRANK SMITH to serve any period of Federal incarceration prior to the completion of his unexpired New York State prison term." Since the offenses to which Smith pleaded occurred before November 1, 1987, the Sentencing Reform Act of 1984 did not govern his sentence.

On July 17, 1992, this court sentenced Smith to two three-year terms of incarceration, to run concurrently with each other and consecutive to Smith's New York State sentence. In its Judgment and Commitment Order, this court made the recommendation currently at issue in this motion: that the Attorney General allow defendant to serve his federal sentence first, before returning him to state custody to complete his pending state sentence. The Federal Bureau of Prisons (the "Bureau") now asserts that the above recommendation is flawed, for it is inconsistent with principles of comity and incorrectly presumes that a federal prosecution can interrupt a state sentence. The Bureau therefore moves

this court to clarify its July 17, 1992 Judgment and Commitment order and remand defendant to state custody so that he can complete his state sentence.[1]

Defendant responds to the Bureau's motion by arguing that the court's recommendation should be upheld under both governing precedent and the language of the plea agreement; alternatively, defendant requests this court to modify his sentence, pursuant to former Rule 35 of the Federal Rules of Criminal Procedure, so that he can serve concurrently the two periods of incarceration. For the reasons described below, the Bureau's motion is granted. Defendant Smith is hereby remanded to the custody of New York State to complete his state sentence, at which time he is to be delivered to federal custody and commence serving his federal sentence.

## DISCUSSION

### I. *Commencement of Smith's Federal Sentence*

Before discussing the principles of comity that are central to this decision, some background on sentence computation is helpful. Under applicable statutory provisions—18 U.S.C. § 3585 for offenses committed after November 1, 1987 and repealed 18 U.S.C. § 3568 for offenses committed prior to that date—the Attorney General is responsible for computing sentences. *United States v. Wilson,* — U.S. —, —, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992). Title 28 of the Code of Federal Regulations delegates that authority to the Federal Bureau of Prisons. 28 C.F.R. § 0.96 (1992). Computing a federal

sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody.

■■■ A federal sentence does not commence until the Attorney General of the United States receives the defendant into his custody for service of that sentence. *Pinaud v. James,* 851 F.2d 27, 30 (2d Cir. 1988) (citing repealed 18 U.S.C. § 3568); *Salley v. United States,* 786 F.2d 546, 548 (2d Cir.1986); *see also United States v. Pungitore,* 910 F.2d 1084, 1118–19 (3d Cir. 1990) ("a federal sentence does not begin to run until the defendant is delivered to the place where the sentence is to be served"), *cert. denied,* — U.S. — – —, 111 S.Ct. 2009–11, 114 L.Ed.2d 98 (1991). When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau agrees to designate the state facility for service of the federal sentence. *Barden v. Keohane,* 921 F.2d 476, 481–82 (3d Cir. 1990); *see* 18 U.S.C. § 3621 (vesting designation authority in Bureau); 28 C.F.R. § 0.96 (delegating authority of Attorney General under repealed 18 U.S.C. § 4082 to Bureau).

■■■ A federal sentence does not begin to run, however, when a defendant is produced for prosecution in federal court pursuant to a federal writ of *habeas corpus ad prosequendum.* Rather, the state retains primary jurisdiction over the prisoner,[2] and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obli-

---

1. Generally, the Bureau files information with a federal court through the United States Attorney's Office for the particular district involved. In this case, however, the United States Attorney's Office for the Eastern District of New York agreed, as part of defendant's plea agreement, not to oppose his request to serve his federal sentence first. As a result, the Bureau has moved independently, and the United States Attorney's Office has taken no position in this matter.

2. As a general rule, the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration. *Brew-*

er, 923 F.2d 1361, 1365 (9th Cir.1991). This jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence. *United States v. Warren,* 610 F.2d 680, 684–85 (9th Cir.1980) ("[T]he sovereign with priority of jurisdiction ... may elect under the doctrine of comity to relinquish it to· another sovereign. This discretionary election is an executive, and not a judicial, function."); *see also Roche v. Sizer,* 675 F.2d 507, 510 (2d Cir.1982) (holding that federal court relinquished jurisdiction by releasing prisoner on bail).

gation. *Thomas v. Whalen,* 962 F.2d 358, 361 n. 3 (4th Cir.1992); *Hernandez v. United States Attorney General,* 689 F.2d 915, 918–19 (10th Cir.1982); *Roche v. Sizer,* 675 F.2d 507, 509–10 (2d Cir.1982); *see also Thomas v. Brewer,* 923 F.2d 1361, 1366–67 (9th Cir.1991) (producing state prisoner under writ of *habeas corpus ad prosequendum* does not relinquish state custody); *Salley,* 786 F.2d at 547–48 (defendant produced and sentenced in federal court via writ of *habeas corpus ad prosequendum* did not begin to serve consecutive federal sentence until delivered into federal custody).

■ This rule derives from the fact that the federal writ of *habeas corpus ad prosequendum* merely loans the prisoner to federal authorities. *Whalen,* 962 F.2d at 361 n. 3; *In re Liberatore,* 574 F.2d 78, 79 (2d Cir.1978); *Crawford v. Jackson,* 589 F.2d 693, 695 (D.C.Cir.1978) ("When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be 'on loan' to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly. Failure to release a prisoner does not alter that 'borrowed' status, transforming a state prisoner into a federal prisoner."), *cert. denied,* 441 U.S. 934, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *see also In re Sindona,* 584 F.Supp. 1437, 1442–43 (E.D.N.Y.1984) (opinion of this court discussing purpose of writ). Principles of comity require that when the writ is satisfied, the second sovereign return the prisoner to the first sovereign. In this case, New York State has primary jurisdiction over Frank Smith, for he was arrested and sentenced by the state prior to any federal proceedings in connection with his federal crimes.

■ Reference to the Second Circuit opinion of *In re Liberatore,* 574 F.2d 78 (2d Cir.1978), helps elucidate the respective powers of state and federal jurisdictions upon issuance of a writ of *habeas corpus ad prosequendum.* While serving a two-year state sentence, the defendant in *Liberatore* was removed to federal court pursuant to a federal writ of *habeas corpus ad*

*testificandum. Id.* at 80. The purpose of this removal was so that defendant could provide information to a federal grand jury. Defendant refused to provide this information, and the federal district court held him in civil contempt. *Id.* at 81. As part of its contempt order, the district court tolled defendant's state sentence during the time defendant was under confinement in federal court. On appeal, the Second Circuit affirmed the finding of contempt, *id.* at 82–84, but held that the district court had no authority to interrupt defendant's service of his state sentence. *Id.* at 87–88. Reviewing the tradition of comity between the federal and state court systems, the Second Circuit quoted the Supreme Court for the following proposition:

> "[t]he chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed to control, before the other court shall attempt to take it for its purpose."

*Liberatore,* 574 F.2d at 88 (*quoting Ponzi v. Fessenden,* 258 U.S. 254, 260–61, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922)). The *Liberatore* court then went on to explain:

> In the context of successive criminal prosecutions by different sovereignties this "chief rule which preserves our two systems of courts from actual conflict of jurisdiction" means that the sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him, ... and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty.... This exclusivity of jurisdiction does not mean, of course that another sovereignty interested in prosecuting the individual or eliciting his testimony must necessarily stand idly by while the prisoner completes the service of the sentence imposed by the courts of the first sover-

eignty. For instance, pursuant to a writ of *habeas corpus ad prosequendum* or, as here, a writ of *habeas corpus ad testificandum* it is clear that the first sovereignty can, *without in any way affecting the integrity of the final judgment of conviction entered there against the prisoner,* "lend" its prisoner to the second sovereignty for trial on charges pending against him there or in order to have him testify in the courts of the second sovereignty.... *But any "loan" to the second sovereignty in compliance with such a writ or any other temporary transfer of custody from the sovereignty having the prior jurisdiction cannot affect in any way whatever any final judgment of conviction already entered against the prisoner there or affect the running of the sentence imposed pursuant to that judgment.* ... Such a loan or temporary transfer cannot empower the courts of the second sovereignty to tamper with the terms of the first jurisdiction's valid prior judgment of conviction.

*Id.* at 89 (emphasis added) (citations and footnotes omitted); *see also Carmona v. Warden of Ossining Correctional Facility*, 549 F.Supp. 621, 622 (S.D.N.Y.1982) ("Petitioner's transfer to federal custody has had no effect on his ongoing state sentence."). As this language makes clear, this court is not empowered to interrupt Smith's state sentence to require him to serve his consecutive federal sentence first.

Defendant proffers two arguments to support his contention that this court has authority to interrupt Smith's state sentence: first, he distinguishes the cases upon which the Bureau relies, many of which are cited above, by stating that all those cases involved habeas corpus petitions by which a prisoner attempted to have the court apply time served in state custody to a subsequent federal sentence; second, he analogizes his case to *United States v. Croft*, 450 F.2d 1094 (6th Cir. 1971), where the Sixth Circuit approved a

district court's directive that a prisoner serve his federal sentence first. Both arguments are flawed, however. Regarding the first, at the very least the facts of *Liberatore* belie defendant's attempted distinction. With respect to the second, as the explanation below makes clear, defendant's reliance on *Croft* is disingenuous at best.

The prisoner in *Croft*, as in this case, was produced for sentencing in federal court under a writ of *habeas corpus ad prosequendum;* the court had to employ this mechanism as the defendant, while released on bond for his federal offense, was arrested and imprisoned on unrelated state charges. *Id.* at 1095. After sentencing, the federal court ordered Croft delivered to federal prison. Instead, however, the prisoner was returned to state custody; after serving approximately ten months of his two-year sentence, he was granted parole and delivered to the federal authorities. *Id.* at 1096. While acknowledging that both state and federal authorities contemplated that his terms would run concurrently, the district court nevertheless denied defendant's request that he receive credit against his federal sentence for time served in state court.[3] *Id.* The Sixth Circuit reversed, holding that where a federal court orders a prisoner's immediate commitment to federal prison, the prisoner's federal sentence commences for purposes of 18 U.S.C. § 3568 upon issuance of that order; erroneous delivery to a state institution does not affect this commencement. *Id.* at 1098–99.

There are at least three reasons why defendant's reliance on this case is misplaced. First, as the Fourth Circuit noted in *Thomas v. Whalen*—a case similar to this one—"the Sixth Circuit subsequently limited *Croft* to the situation where a state court orders its sentence to run concurrently with a federal sentence." *Whalen*, 962 F.2d at 362 (*citing Vaughn v. United States*, 548 F.2d 631, 633 (6th Cir.1977). Clearly, Smith's federal and state sen-

---

**3.** It is worthwhile to note that *Croft* therefore raised the same issue upon which defendant attempts to distinguish the cases cited by the Bureau.

tences are not concurrent.[4] Second, this court's "recommendation" that Smith serve his federal sentence first differs from the *Croft* order requiring "immediate" commitment to a federal institution. *See Whalen*, 962 F.2d at 362 (elaborating fully on this argument to distinguish its situation from *Croft*). Nevertheless, this difference does not establish whether this court has the power to issue such an order. Third, as cases cited throughout this opinion make clear, defendant's assertion that *Croft* is binding authority because it, like this case and unlike *Whalen*, required application of repealed Section 3568 is without substance. *See Whalen*, 962 F.2d at 363 ("If the opinion is viewed as an application of section 3568, then the court erroneously permitted 'constructive' receipt at the federal penitentiary to satisfy the statute's plain requirement of actual receipt."). Rather, what the cases discussing this topic—especially *Liberatore*—make overwhelmingly clear is that principles of comity require one sovereign to defer to another who has primary jurisdiction. New York State had and did not relinquish primary jurisdiction over Frank Smith. As stated above, an intrusion on this jurisdiction in reliance on *Croft* would ignore and violate principles of comity.

## II. *Modification of Defendant's Sentence*

Defendant invokes former Rule 35 of the Federal Rules of Criminal Procedure—effective for offenses committed before November 1, 1987—and urges this court to modify his federal sentence so that it runs concurrently with his state sentence. As an initial matter, there is no question that this court had the discretion to order Smith's federal sentence to run *consecutively* to his state sentence:

4. The *Whalen* court did not find this distinction determinative. *See Whalen*, 962 F.2d at 362–63 n. 7. That court also declined to distinguish *Croft* on the basis of the Sixth Circuit's finding that the federal sovereign had primary jurisdiction over the defendant in that case. *Id.*

5. Moreover, even if this court were to make the desired recommendation of concurrence and even if the Bureau were to accept that recommendation, defendant nevertheless would have to be returned to state custody. When, as in this case, the state has primary jurisdiction over

"[S]entences imposed by a federal court are administered by the Attorney General and, while that court may recommend that a federal sentence be served in a state facility concurrently with a state sentence, the Attorney General has discretion as to whether or not he will follow the recommendation." However, this statement does not apply to a federal sentence that is not to commence until the state sentence has been completed. The right of federal judges to impose such sentences has been recognized for many years.

*Salley*, 786 F.2d at 547 (*quoting United States v. Sackinger*, 704 F.2d 29, 30 (2d Cir.1983)). As this quotation also indicates, however, even if Rule 35 authorized this court to modify Smith's sentence and even if this court agreed that such a modification were appropriate, it could only recommend—and not order—that the sentences be served concurrently. *See also Barden*, 921 F.2d at 483 ("Only the Attorney General or the Bureau, as, his delegate, has [the] power" to order concurrence).[5]

As to this court's power to recommend modification of its sentence, former Rule 35 provides in relevant part:

(a) Correction of Sentence. The court may correct an illegal sentence at any time....

(b) Reduction of Sentence. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed....

Defendant argues that the government's promise not to "oppose a request by FRANK SMITH to serve any period of Federal incarceration prior to the completion of his unexpired New York State pris-

a defendant, the federal judge may not order the delivery of the defendant for service of his sentence in a state institution, for to do so would interfere with the state's jurisdiction. *See Warren*, 610 F.2d at 684–85 (holding that district court's attempt to transfer prisoner from state to federal custody violated "fundamental principles of comity and separation of powers"); *cf. Liberatore*, 574 F.2d at 79 n. 1 (recommending to Attorney General that prisoner serve imprisonment on federal contempt in state institution).

on term" makes his sentence "illegal." However, a sentence inconsistent with a plea agreement cannot be characterized as "illegal" as that term has been applied under Rule 35. *Warren,* 610 F.2d at 684 (*citing Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962)). Accordingly, this motion falls under the time constraints of Rule 35(b). Since defendant did not file his brief requesting this alternative form of relief until November 27, 1992, more than 120 days after the sentencing date of July 17, 1992, he falls outside the requisite 120–day period.[6]

### III. *Credit for Time Served Under Federal Writ*

■ Defendant also requests that this court credit his federal sentence for the two years he has spent in federal custody under the writ of *habeas corpus ad prosequendum.* As the Bureau's memorandum points out, however, defendant's request evidences a misconstruction of his current status. Despite the execution of the federal writ, defendant remains under the primary jurisdiction of New York State; as such, defendant's state sentence has continued to run, and he has received credit on that sentence for any time he has served under the writ. At least for cases involving offenses after November 1, 1987, to which 18 U.S.C. § 3585(b) applies, the Supreme Court has explained that "Congress made clear that a defendant could not receive double credit for his detention time." *Wilson,* —— U.S. at ——, 112 S.Ct. at 1356.

Defendant nevertheless attempts to argue that because he committed his offense prior to November 1, 1987, repealed 18 U.S.C. § 3568 applies to his sentence and allows him the credit he seeks. Although his assertion that the repealed statute gov-

erns his sentence is correct, his conclusion is wrong. Section 3568 provides:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed....
>
> .    .    .    .    .
>
> No sentence shall prescribe any other method of computing the term.

In *Crawford v. Jackson,* 589 F.2d at 694, the District of Columbia Circuit, also discussing the sentences of a prisoner produced under a writ of *habeas corpus ad prosequendum,* held that

> failure to return a prisoner to a sending state upon conclusion of the proceedings in the receiving state, [when] administrative entries reflect that the prisoner has started to serve the receiving state's sentence, [does not] constitute receipt of an individual at the "penitentiary, reformatory or jail" within the meaning of Title 18 U.S.C. 3568.

Other courts have agreed, stating that a federal prisoner is not entitled to prior custody time credit towards a federal sentence for a period spent in state custody, especially when the state has provided credit for the same period. *United States v. Grimes,* 641 F.2d 96, 99–100 (3d Cir.1981); *Siegel v. United States,* 436 F.2d 92, 95 (2d Cir.1970); *see also Pinaud,* 851 F.2d at 30 ("[C]ourts have uniformly interpreted the language of § 3568 and its predecessors as precluding the calculation of the time served on a federal sentence from any date other than that on which the defendant was

---

**6.** Defendant also claims that as this court's recommendation that defendant serve his federal sentence first was "illegal," the entire sentence was illegal and therefore places him within Rule 35(a). While this court questions whether the invalidity of a recommendation renders an entire sentence illegal within the meaning of Rule 35—certainly defendant has provided no support for this proposition—it is worthwhile to note that if this court had authority to recom-

mend the requested modification, it would adhere to its initial sentencing decision. While recognizing that defendant's service of his state sentence prior to his federal sentence means that he will be ineligible for parole or work release programs, this court nevertheless finds that imposition of consecutive sentences in this case reflected the seriousness of defendant's federal crime.

delivered to federal prison officials. Thus, even state prisoners whose state sentences have been vacated have been held not entitled to credit on unrelated federal sentences."). Moreover, under the clear language of Section 3568, the decision of whether to allow prior custody credit lies within the discretion of the Attorney General and the Bureau of Prisons. *United States v. Edwards*, 960 F.2d 278, 281 (2d Cir.1992).

For all these reasons, defendant's request that this court credit his time spent in a federal institution under the writ of *habeas corpus ad prosequendum* is denied.

## CONCLUSION

Insofar as this court's order of Judgment and Commitment recommended that defendant serve his federal sentence first, this opinion is intended to clarify—and amend—that order. The United States Marshal is hereby directed to return defendant Smith to the proper New York State authorities so that he may complete his state sentence, as the purposes of the writ of *habeas corpus ad prosequendum* have been satisfied. Upon completion of his state sentence, defendant will be delivered to federal authorities for service of his consecutive federal sentence. Defendant will not receive credit toward that sentence for time spent in federal custody, for that time was part of his state sentence. Finally, defendant's Rule 35 motion is hereby denied.

SO ORDERED.