David L. SHUMATE, Petitioner,

v.

**UNITED STATES of America, Respondent.**

No. 95–CV–884.

United States District Court, N.D. New York.

July 6, 1995.

**138**

John P. Miller, Albany, NY, for petitioner.

Thomas J. Maroney, U.S. Atty., Albany, NY, for respondent U.S. (Bernard J. Malone, Jr., Asst. U.S. Atty., of counsel).

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

Comes now petitioner Shumate seeking an order from this Court clarifying his sentence and ordering the United States Bureau of Prisons to comply with the terms of the plea agreements under which he was sentenced. In particular, petitioner Shumate seeks an order from this Court directing that the United States Bureau of Prisons remove him from the New York State corrections facility where he is presently incarcerated and maintain him in federal custody, in a federal facility, for the duration of his federal sentence. In this regard the Court also notes that the New York State Supreme Court, Schenectady County, by its initial sentencing, has already expressed its view that petitioner should serve his sentence in a federal institution, and that the New York State Department of Corrections (hereinafter DOCS) has been and remains willing to cooperate in providing petitioner the relief he seeks.

In short then, it is only the United States Bureau of Prisons (hereinafter BOP) which has determined that it is unable to comply with the sentencing scheme agreed to by all the parties and mutually relied upon by the Court's of both sovereigns. The Court has determined that petitioner's Motion is best treated as an application for relief under 28 U.S.C. § 2241 *et seq.*, docketed herein as 95–CV–884. The Court also finds that in light of BOP's administrative determination that it may not take custody of petitioner in spite of the judgments from two courts directing that they do so, circumstances exist such as to dispense with any further requirement of exhaustion of remedies by petitioner. If the relief petitioner seeks is available to him, it may appropriately issue from this the federal sentencing Court.

## I. BACKGROUND

Petitioner was indicted on New York State charges on August 13, 1993, in Schenectady County, New York. On that same date he was arrested by the multi-jurisdictional Drug Enforcement Task Force on a warrant which issued under the state indictment. On August 20, 1993, petitioner was indicted by a federal grand jury on charges related to those underlying the state indictment. On August 28, 1993 he was produced in federal court on a writ of *habeas corpus ad prosequendum* for arraignment on the federal indictment.

Petitioner was thereafter maintained continuously in federal custody until he pled guilty to the federal charges before this

Court on April 11, 1994. On April 12, 1994, petitioner was produced in the Schenectady County court where he pled guilty to the state charges and was thereafter returned to the custody of the United States Marshal. On August 10, 1994, petitioner was sentenced by this Court to 204 months incarceration and remanded to the United States Marshal for delivery to a federal facility. Thereafter, on August 22, 1994, petitioner was sentenced in Schenectady County state court to an indeterminate term with a minimum of fifteen years and a maximum of life. As is discussed in greater detail below, both the federal and state pleas were negotiated in coordination with each other and both the federal and state courts sentenced petitioner mindful of the sentences imposed or to be imposed by the other sovereign. To this date, however, the terms of the plea agreements, which both courts and all the concerned parties agreed to and which both sentencing courts relied on and incorporated into their respective sentencing schemes, have yet to be implemented.

Before the petitioner pled in either court, the United States Attorney, the Schenectady County District Attorney and defendant's attorney entered into intensive plea bargain negotiations. Those negotiations yielded agreement in principle as to the sentences that were later approved by both Courts and imposed as described *infra*. It was also agreed by all the concerned parties that if petitioner entered pleas of guilty to felonies in both Schenectady County Court and in the United States District Court for the Northern District of New York, that the state and federal sentences imposed should, with the permission of both courts, run concurrently. Finally, the place these lengthy sentences were to be served was apparently an important factor in petitioner's decision to accept the plea offers from the state and the federal prosecutors. Place of incarceration was one of the terms discussed during plea negotiations and the parties agreed that petitioner should first serve his federal sentence, in a federal facility, and upon satisfaction of the federal sentence petitioner would then be transferred to a New York State facility to serve the remainder, if any, of his concurrent New York State sentence.

The United States Attorney and the Schenectady County District Attorney, as the executive representatives negotiating on behalf of their respective sovereigns, fully appreciated that difficulties could arise later as to their agreement in principle that petitioner should first serve his federal sentence in a federal facility. These difficulties were anticipated because New York State, as the sovereign which first arrested petitioner, had therefore asserted primary jurisdiction over him. *See Ponzi v. Fessenden,* 258 U.S. 254, 260–61, 42 S.Ct. 309, 310–11, 66 L.Ed. 607 (1922); *In re Liberatore,* 574 F.2d 78 (2d Cir.1978). The general rule as to place of incarceration is that regardless of the order in which sentences are imposed, the sentence of the sovereign which has primary jurisdiction over the defendant is served first. *Liberatore,* 574 F.2d at 89–90. From that general principle the Federal BOP has promulgated its perfectly reasonable general policy that the sovereign with primary jurisdiction is responsible for custody of a defendant serving concurrent federal and state sentences, until primary jurisdiction is relinquished. (Govt. Response, BOP Attachment at 4).

On July 5th, 1994, the United States Attorney, the Schenectady County District Attorney and defendant's attorney met specifically to resolve the primary jurisdiction issue. As a result of that meeting Robert M. Carney, the Schenectady County District Attorney, executed a written Waiver of Primary Jurisdiction to Assistant United States Attorney Bernard J. Malone, which reads in pertinent part as follows:

> After intensive negotiating involving all parties in the above-captioned case which is currently pending in the federal system and in Schenectady County Court, please be advised that it is our determination that we will relinquish any priority of jurisdiction in the person of David L. Shumate to federal authorities.

> It is our understanding that Mr. Shumate will be sentenced federally upon his conviction on your indictment 93–CR–293. After he is sentenced on that conviction, he will be sentenced as a persistent felon in

the Schenectady County Court upon his conviction for a Criminal Sale of a Controlled Substance in the Third Degree to a concurrent term of 15 years to life.

The purpose of this letter is also to confirm our understanding that based upon our relinquishment of priority of jurisdiction, Mr. Shumate will serve his sentence federally. If there is any time to be served on the state sentence, it would be served after the conclusion of the federal sentence.

(Carney Waiver, Pet. Notice of Motion, Ex. C).

By its plain terms the waiver fully and unconditionally yields New York State's primacy of jurisdiction to the United States. Secure in the belief that a waiver of primary jurisdiction had been effected, petitioner proceeded to enter the coordinated guilty pleas. On August 10, 1994, petitioner was sentenced by this Court to 204 months incarceration, which this Court intended that petitioner serve at a federal facility concurrently with his forthcoming state sentence.

Thereafter, on August 22, 1994 the Schenectady County Court sentenced petitioner to a minimum of fifteen years and a maximum of life. It was likewise represented to Judge Harrigan of that Court that the state had waived its primary jurisdiction, that it was the belief of all concerned that petitioner would serve his federal sentence first, and that the federal court had agreed to the concurrent aspect of the negotiated pleas (State Sntcng. Tr. at 2–4). Judge Harrigan expressly imposed his sentence to run concurrent with the earlier imposed federal sentence and remanded petitioner to the custody of the federal authorities (State Sntcng. Tr. at 7). After that sentencing, however, petitioner was committed to New York State DOCS custody where he has languished since. Notwithstanding DOCS offer to transfer petitioner to federal custody and the ongoing efforts of petitioner's attorney, the United States Attorney and the Court, BOP has refused to take custody of petitioner under the apparent belief that it may not do so because it views New York State's express waiver of its primary jurisdiction as insufficient to invest this Court with primary jurisdiction over the petitioner. BOP's rejection of the State's waiver and its consequent refusal to accept petitioner worked two fundamental alterations in the sentencing scheme contemplated by both courts, both prosecutors and the defendant: 1) petitioner's federal sentence no longer ran concurrent with his state sentence; and 2) petitioner was unable to serve his federal sentence in a federal facility.

## II. ANALYSIS:

### a. The Concurrence Problem:

At the time of petitioner's federal sentencing it was this Court's intention that the federal sentence be served concurrent with petitioner's forthcoming state sentence. The Court was informed at sentencing, however, that the state had expressly relinquished its priority of jurisdiction and that the forthcoming state sentence would be (and in fact was) expressly made concurrent with the federal sentence. Since the Court believed (and continues to believe) that the district attorney's relinquishment was sufficient for the federal court to obtain primary jurisdiction, the Court did not indicate in its sentencing judgment that the federal sentence would be concurrent with the forthcoming state sentence. Rather, it was the belief of all the parties that the natural outcome of the state's relinquishment would be that petitioner would serve his federal sentence first, in a federal facility, and that by its own terms the state sentence would run concurrent to that. Once the BOP dishonored the waiver of primary jurisdiction, however, petitioner was faced with the prospect of serving his full state sentence and upon completion, being transferred to a federal facility to consecutively serve his full federal sentence, as a result of this Court's failure to expressly denominate its sentence as concurrent with the yet to be imposed state sentence.

After several months of unsuccessful attempts to resolve petitioner's dilemma with the assistance of the United States Attorney, petitioner's attorney sought the assistance of the Court which in turn contacted BOP in the person of Hank Sadowski, BOP's Deputy Regional Counsel. Mr. Sadowski has from

first to last been more than cooperative in untangling the complex sentencing issues petitioner presents. It is the Court's understanding that on the strength of a letter from the Court clarifying its intention that Mr. Shumate serve his sentences concurrently, Mr. Sadowski has directed BOP to *nunc pro tunc* designate the state facility as the place of service for petitioner's federal sentence and to commence petitioner's federal sentence as of the August 10, 1994 date of sentencing. *See Barden v. Keohane,* 921 F.2d 476 (3d Cir.1990).

Mr. Sadowski has also made inquiry into New York State's unwillingness to grant petitioner credit for time spent in custody under the federal writ, from September 28, 1993 through August 9, 1994. Mr. Sadowski now informs the Court that he has directed BOP to credit this time towards petitioner's federal sentence and that petitioner's federal sentence computation reflects this credit.

These prongs of petitioner's motion are therefore resolved and to the extent that petitioner's papers seek relief on these issues his motion is moot.

### b. The Primary Jurisdiction Problem:

Notwithstanding Mr. Sadowski's commendable and much appreciated efforts towards restoring to petitioner that which was intended to be achieved by the sentencing scheme imposed by both Courts, BOP informs the Court that it is unable to redress petitioner's primary complaint concerning his place of incarceration because to do so would violate BOP's policies.

■ It is BOP's position that where a defendant is first arrested by state authorities, absent relinquishment of primary jurisdiction by the state, the defendant must serve his state sentence in state custody. The Court is in full agreement with this proposition. BOP further maintains, however, that primary jurisdiction may only be relinquished by the state's granting a defendant parole, granting a defendant bail, or by the state's dismissal of its charges against the defendant. Therefore, BOP maintains, the Schenectady County District Attorney's express relinquishment of primary jurisdiction was insufficient to invest this Court with primary jurisdiction. If that proposition were true it would follow that this Court could not order delivery of petitioner for service of sentence in a federal institution because such an order would be in excess of this Court's jurisdiction. This Court has found no authority, however, for the proposition that the rule of primary jurisdiction is so narrow as to either preclude the Court, *on these facts,* from implementing the sentencing scheme previously negotiated between the prosecuting sovereigns and coordinated between the sentencing courts, or to unjustly preclude petitioner from receiving the benefits contemplated by his acceptance of the respective plea bargains.

■ While exhaustive research has yielded little case law on the issue of the efficacy of a sovereign's express written waiver of priority of jurisdiction, the general parameters of the doctrine of primary jurisdiction are clear:

> Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns. Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial, function.

*United States v. Warren,* 610 F.2d 680, 684 (9th Cir.1980).

BOP does not object that either sentencing court has usurped the election reserved to the executive branches, which was the Ninth Circuit's concern in *Warren;* nor did such a usurpation occur here. Both Court's clearly relied upon the express waiver negotiated between petitioner and the two sovereigns. BOP simply refuses to give effect to New York State's relinquishment, pointing only to *Warren, supra,* and to *United States v. Smith,* 812 F.Supp. 368 (E.D.N.Y.1993) for authority. Neither case, however, is controlling here.

■ *Warren* turned on a federal district court's attempt to transfer a defendant from primary state custody to federal custody without the primary state sovereign having relinquished its priority of jurisdiction and in the face of that state sovereign's objections. *Warren* nowhere addresses a state's prior express relinquishment of primary jurisdiction. *Smith* addressed "whether a federal court may interrupt a state term of imprisonment to recommend that the state prisoner first serve a subsequently imposed federal sentence." *Smith*, 812 F.Supp. at 369. Nowhere in *Smith* is it suggested that New York State had previously relinquished its priority of jurisdiction and therefore *Smith* answered the question in the negative. In dicta *Smith* noted that priority of jurisdiction "continues until the first sovereign relinquishes its priority by, *for example*, bail release, dismissal of the state charges, parole release, or expiration of the sentence." *Id.* at 371 n. 2 (emphasis added). Nowhere does *Smith*'s dicta purport to establish an exclusive list of the methods by which primary jurisdiction may be relinquished. The Court notes also that the relinquishment discussion in *Smith* arose in the context of a federal court's recommendation to transfer custody of a state prisoner to a federal facility solely on the strength of a writ of *habeas corpus ad prosequendum* and in the face of the state sovereign's continuous assertion of its undisputed priority of jurisdiction: on those facts it makes sense that *Smith* would survey only *implicit* manifestations of relinquishment by the state. In short, neither *Warren* nor *Smith* establish that New York State was unable to expressly relinquish its priority of jurisdiction by waiver and exhaustive research has disclosed no case nullifying such a relinquishment.

■ This is not a case where a federal court is attempting to "tamper[ ] with a valid final judgment of a court of a different sovereignty." *Liberatore*, 574 F.2d at 85. Quite to the contrary both the executive representative of the primary state sovereign, by its express waiver, and the judicial branch of that sovereign, by entering judgment in reliance on that waiver, have indicated their intention and belief that the federal court possessed primary jurisdiction when it en-

tered its judgment. Nor does any other aspect of the Second Circuit's comity analysis in *Liberatore* speak to a state sovereign's inability to relinquish its primary jurisdiction by express waiver. Indeed *Liberatore*'s holding expressly noted that there, Connecticut had the right of prior jurisdiction over the defendant and "*had availed itself of this right* by seeking and obtaining his conviction in the courts of that state," from which it followed that the district court could not take any action which would "interfere with the execution of that valid *preexisting* New York State judgment of conviction." *Id.* at 89. Where, as here, New York State expressly declined to avail itself of its right of prior jurisdiction, nothing in *Liberatore*'s principles precludes the instant transfer of jurisdiction to the United States.

■ Nor is this a case where the federal court improperly relied only on a writ of *habeas corpus ad prosequendum* to assert jurisdiction over a defendant in state custody. *See Thomas v. Whalen*, 962 F.2d 358 (4th Cir.1992); *cf. Liberatore*, 574 F.2d at 89 (loan to the second sovereignty in compliance with such a writ has no effect on prior jurisdiction.) It is true that petitioner was in federal custody on such a writ when New York State relinquished its priority of jurisdiction. Those cases which hold that such writs will not invest the federal court with primary jurisdiction, however, in no way establish that the existence of such a writ *precludes* the federal court from assuming primary jurisdiction over petitioner merely because he was on loan to the federal sovereignty in compliance with such a writ when New York State independently relinquished its priority of jurisdiction. BOP itself acknowledges that the act relinquishing primary jurisdiction only "*usually* requires the United States Marshal to assume custody pursuant to an outstanding detainer." (Govt. Response, BOP Attachment at 4) (emphasis added); *see also United States v. Vann*, 207 F.Supp. 108, 111 (E.D.N.Y.1962) ("The controlling factor in determining the power to proceed as between two contesting sovereigns is the actual physical custody of the accused.") That petitioner was already in federal custody did not of itself prevent this

Court from assuming primary jurisdiction upon New York State's relinquishment.

BOP advises that under its view, had the Court arranged with the Schenectady County District Attorney to grant petitioner bail, and further arranged for the U.S. Marshal to immediately arrest petitioner upon his being "bailed," the Court could have indirectly achieved the jurisdiction which it herein finds it was invested with expressly and directly. Indeed, in its effort to accommodate the Court BOP suggests that if the Court could somehow arrange for the New York State Court to vacate its sentence and release the petitioner on bail, BOP could then take possession of petitioner at which time the New York State Court could reimpose the very same sentence. It is unclear to the Court who such a pretextual undertaking would be intended to satisfy since every conceivably concerned party would be required to participate, but in any event, the Court finds that such machinations are, *on these facts,* unnecessary for BOP to take custody of petitioner for service of his federal sentence.

## III. CONCLUSION

For all the foregoing reasons the Court finds that New York State effectively relinquished its priority of jurisdiction and that this Court had primary jurisdiction over the petitioner when it imposed the federal sentence. It is therefore **ORDERED**

That the United States Bureau of Prisons assume custody of the petitioner for service of the remainder of his federal sentence as determined under the time served calculations previously made by the Bureau of Prisons; It is further **ORDERED**

That the Bureau of Prisons, as petitioner's primary custodian, implement its stated policy as to place of incarceration and maintain petitioner in a federal facility for the duration of his federal sentence until such time as that sentence is satisfied, at which time petitioner should be returned to the custody of New York State to serve the remainder, if any, of his concurrent state sentence.

**IT IS SO ORDERED.**