IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

## MIQWON DEON LEACH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Obion County**
**No. 3-424    William B. Acree, Jr., Judge**

———————————

**No. W2004-01702-CCA-R3-PC  - Filed July 14, 2005**

———————————

Petitioner, Miqwon Deon Leach, appeals the dismissal of his petition for post-conviction relief arguing that he was denied his constitutional right to testify and that his rights under the Interstate Compact on Detainers were violated.  Petitioner also contends that his trial counsel rendered ineffective assistance (1) by failing to follow the procedures set forth in *State v. Momon*; (2) by failing to object to the State's failure to comply with the provisions of the Interstate Compact on Detainers, and (3) by failing to file a motion for a speedy trial.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee, for the appellant, Miqwon Deon Leach.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of first degree felony murder, second degree murder, and conspiracy to commit second degree murder.  The jury sentenced Petitioner to life without the possibility of parole for his felony murder conviction.  The trial court merged Petitioner's conviction for second degree murder with his felony murder conviction, and sentenced Petitioner to eight years for his conspiracy conviction, to be served concurrently with his life sentence.  This Court affirmed Petitioner's convictions on direct appeal. *State v. Clarence Carnell Gaston, Miqwon Deon Leach, and Mario Deangalo Thomas*, No. 22001-02046-CCA-R3-CD, 2003 WL 261941 (Tenn.

Crim. App., Jackson, Feb. 7, 2003), *perm. to appeal denied* (Tenn. 2003). The evidence supporting Petitioner's convictions was summarized as follows:

> [Nicholas] Hansard testified that [Petitioner] told him approximately three weeks before the shooting that he had been robbed by Jeff Young. On New Year's Eve, Hansard heard [Petitioner], [Mario] Thomas, and [Justin] Hill discussing plans to get Young if they ran into him at the club. When Hansard was at the club later that evening, [Petitioner] called him away from dancing, told him that it was about to "go down," and led him outside. Hansard said that he saw a pistol in [Petitioner]'s hand, and, when the initial firing stopped and he peeked from his hiding place, he saw [Petitioner] standing over the victim's body, kicking him with his foot. The next day, [Petitioner] told him that he had shot the victim.
>
> The woman with whom Hansard had been dancing, Sonya Polk, confirmed that [Petitioner] called Hansard away during the middle of a dance, and the two men then left the club. After the men left, she heard gunshots. Jeff Young and Jarvis Jones, who were both standing with the victim before the shooting began, testified that they saw [Petitioner] with a pistol, with Young adding the additional detail of having seen [Petitioner] "jackin' the gun off."

*Id*., at *6.

At the post-conviction hearing, Petitioner said that he was arrested for the offenses in February 1999. At some point, Petitioner said that he was transferred to federal custody and was confined in a federal facility from June 1999 to February 2000 when he entered a plea of guilty to the federal charges. He was transferred back to the State's custody on the same day that he entered his guilty plea in federal court. He was tried on the State charges in March 2001.

Petitioner stated that he never discussed with his trial counsel whether or not he would testify at trial, and the trial court did not hold a hearing concerning his decision to testify or not to testify. Petitioner said that his testimony would have assisted his defense by giving the jury "something to reweigh other than what they had."

On cross-examination, Petitioner conceded that he had never filled out any "paperwork on the Interstate Compact." Petitioner said, however, that his counsel had orally requested a speedy trial which was part of the terms of the Interstate Compact on Detainers ("Compact"). Petitioner said that although he had been arrested before the current charges, he had never been tried for another offense.

Jerry Vastbinder, the Sheriff of Obion County, said that Petitioner was arrested on February 23, 1999, and remained in the Obion County jail because he could not make bond. On June 29, 1999, the Sheriff's Department transferred Petitioner to federal custody pursuant to an order of writ of habeas corpus *ad prosequendum* issued by the United States Marshall Service. Petitioner was released back into the custody of the Obion County Sheriff's Department on February 24, 2000,

immediately after entering a guilty plea to the federal charges. Sheriff Vastbinder said that Petitioner's transfer from state to federal custody and back to state custody was not achieved through the Compact.

Petitioner's trial counsel said that he discussed the issue of testifying at trial with Petitioner on several occasions, and had records of at least two of those meetings. Following a discussion on January 18, 2001, counsel advised Petitioner it would be in his best interest to testify but cautioned Petitioner that he had to prepare himself for the State's cross-examination. Counsel and Petitioner met again on February 28, 2001, and discussed calling Tamara Fuller as a witness in lieu of Petitioner testifying. Eventually, Petitioner decided not to testify primarily because none of his co-defendants were going to testify. Counsel supported Petitioner's decision because Petitioner's statement to the police was not introduced into evidence during the State's case-in-chief, and the prior statement, which would most likely have been introduced during Petitioner's cross-examination, was damaging to Petitioner's defense. Counsel admitted that a *Momon* hearing was not conducted because he simply forgot to request one.

The post-conviction court found that the record established that the procedural mandates reflected in *Momon* were not carried out. The post-conviction court concluded, however, that the failure to conduct a *Momon* hearing was harmless error beyond a reasonable doubt based on the testimony of several eyewitnesses at trial that Petitioner was present during the commission of the offenses, and the corroboration of other elements of the State's evidence by various witnesses.

Relying on *United States v. Mauro*, 436 U.S. 340, 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978), the post-conviction court further found that provisions of the Compact were not applicable to Petitioner's case.

The post-conviction court found that there was no unreasonable delay between Petitioner's indictment for the current offenses and his trial on those charges, and that Petitioner failed to establish that he was prejudiced by any conduct on the part of his trial counsel in this regard.

## II. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The trial court's findings of fact in a post-conviction hearing are afforded the weight of a jury verdict. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Therefore, this Court may not re-weigh or re-evaluate these findings nor substitute its inferences for those of the trial judge unless the evidence in the record preponderates against those findings. *State v. Honeycutt*, 54 S.W.3d 762, 763 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In addition, questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court, and not this Court. *Id*. However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel

rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *Burns*, 6 S.W.3d at 461.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

### III. Interstate Compact on Detainers

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. Petitioner's free-standing post-conviction challenge based upon the State's alleged violation of the Compact does not implicate the violation of a constitutional right for which post-conviction proceedings may provide relief. *See* Tenn. Code Ann. § 40-30-103. The Compact's provisions are "statutory rights, not fundamental, constitutional, or jurisdictional." *State v. Garmon*, 972 S.W.2d 706, 710 (Tenn. Crim. App. 1998).

Petitioner also argues, however, that his trial counsel's assistance was ineffective because he failed to challenge the State's failure to adhere to the provisions of the Compact either before trial or in Petitioner's motion for new trial. Petitioner contends that he began serving his federal sentence when he entered his plea of guilty to the federal charges, and that Petitioner was entitled to invoke the time limits set forth in the Compact whether or not the State filed a detainer.

Sheriff Vastbinder testified that Petitioner was arrested in Obion County on February 22, 1999, for the current offenses. Petitioner was unable to post bond and remained in the Obion County jail pending his trial. Certain federal drug charges arose out of the same sequence of events which

culminated in the State charges. On June 29, 1999, Petitioner was transferred to a federal facility pursuant to a writ of habeas corpus *ad prosequendum* to await trial on the federal charges.

Petitioner said that he was in a federal facility from June 1999, to February 2000. During that period of time, he was brought back to the Obion County circuit court at least twice for hearings. Petitioner said that he usually stayed for part of the day and then was returned to the federal facility. On February 24, 2000, Petitioner entered a plea of guilty to the federal charges and was released back into the State's custody on the same day.

The Compact is an agreement among the various states, the District of Columbia, and the United States which "is designed to 'encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, information or complaints." *State v. Brown*, 53 S.W.3d 264, 284 (Tenn. Crim. App. 2000) (quoting Tenn. Code Ann. § 40-31-101, art. I). The Compact thus provides a procedure whereby prisoners incarcerated in one state may initiate the disposition of criminal charges against them in another state. The Compact also provides a procedure for the prosecutors in one state to initiate the disposition of criminal charges against a prisoner in another state. The federal government is a "state" for purposes of the Compact. Tenn. Code Ann. § 40-31-101, art. II(c); *Mauro*, 436 U.S., at 355-56, 98 S. Ct., at 1845.

The Compact's provisions are triggered only when a prisoner has "entered upon" and "is serving a term of imprisonment in any party state," and "a detainer is filed with the custodial or sending state, which includes the United States, by another state which has untried charges pending against the prisoner." Tenn. Code Ann. § 40-31-101, art. III(a) and art. IV(a); *Brown*, 53 S.W.3d at 285 (citing *Mauro*, 436 U.S. at 340, 98 S. Ct. 1834). A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985).

In *Brown*, the defendant was transferred between federal and state custody on several occasions by means of a writ of habeas corpus *ad prosequendum*. The defendant filed a motion to dismiss the charges against him because the State violated the provisions of the Compact. In upholding the trial court's dismissal of the defendant's motion, this Court stated:

> The United States Supreme Court has explicitly held that a writ of habeas corpus *ad prosequendum*, "directing the production of a . . . prisoner for trial on criminal charges, is not a detainer within the meaning of the [Compact] and thus does not trigger the application of the [Compact]." *Mauro*, 436 U.S. at 349, 98 S. Ct. 1984. We have also recognized that the [Compact] "is not the exclusive means of transfer of prisoners between jurisdictions" and have held that "the writ of habeas corpus *ad prosequendum* [is] not . . . a detainer within the application of the [Compact]." *Metheny v. State*, 589 S.W.2d 943, 945 (Tenn. Crim. App. 1979). Because the [Compact] was never triggered, the transfer of the Defendant between federal and

state custody before the final disposition of the charges against him did not violate the [Compact].  *See Mauro* 436 U.S. at 360-61, 98 S. Ct. 1834; *Metheny*, 589 S.W. 2d at 945.

In his brief, Petitioner makes several references to what appears to be a transcript of a hearing that was held in Obion County prior to his trial.  According to these references, the prosecutor expressed concern during the hearing that the provisions of the Compact had been triggered when Defendant was delivered into federal custody.  We note that Petitioner has not included this transcript with the record on appeal.  Nonetheless, and despite the prosecutor's apparent concerns, the provisions of the Compact were never triggered because the federal government did not seek temporary custody of Petitioner by means of a detainer.

Petitioner appears to argue that the State lost jurisdiction over him when he was transferred into federal custody.  Petitioner contends that the only mechanism by which the State could regain custody of him was by means of a detainer.  Petitioner's argument, however, misconstrues the nature of a writ of habeas corpus *ad prosequendum.*

As noted above, a detainer is not the exclusive means of transferring a prisoner from one jurisdiction to another for the disposition of criminal charges.  The *Mauro* court observed that "since the time of *Ex parte Bollman*, [4 Cranch 75, 2 L. Ed. 664 (1807)], the statutory authority of federal courts to issue writs of habeas corpus *ad prosequendum* to secure the presence, for purposes of trial, of defendants in federal cases, including defendants then in state custody, has never been doubted." *Mauro*, 436 U.S. at 358, 98 S. Ct. at 1846.

The transfer of a state-held defendant into federal custody pursuant to a writ of habeas corpus *ad prosequendum*, however, does not disturb the sending state's primary jurisdiction over the defendant. *United States v. Smith*, 812 F. Supp. 368, 370 (E.D.N.Y. 1993).  "This rule derives from the fact that the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities," and "the sending state's jurisdiction over the accused continues uninterruptedly." *Id.*, at 371 (quoting *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978)).

Petitioner argues that he was serving a federal sentence when he was transferred back into State custody and thus entitled to the Compact's time constraints whether or not the State filed a detainer.  As we stated in *Brown*, the Compact "applies only to prisoners who are already serving a sentence of imprisonment in another jurisdiction." *Brown*, 53 S.W.3d at 285 (citing Tenn. Code Ann. § 40-31-101 art. III(a), art. IV(a)).  Petitioner was held in federal custody while he was awaiting trial on the federal drug charges.  He did not enter a plea of guilty to those charges until February 2000.  Although Petitioner was transferred between state and federal custody prior to the entry of his guilty plea in federal court, he was not serving a "term of imprisonment."

Contrary to Petitioner's argument, his federal sentence did not commence when he entered a plea of guilty to the federal charges.  Rather, a federal sentence commences on the date that the defendant is received into federal custody for transportation to the federal detention facility at which

he is to serve his sentence, or the defendant voluntarily presents himself at the federal detention facility. 18 U.S.C. § 3585 (2005); *see also Thomas v. Brewer*, 923 F. 2d 1361, 1367 (9th Cir. 1991). On the same day as his federal conviction, however, Petitioner was returned to Obion County to stand trial on the state charges. Once Petitioner returned to state custody, the writ of habeas corpus *ad prosequendum* was no longer operative." *Mauro*, 436 U.S. at 361 n. 26, 98 S.Ct. at 1848.

Because the terms of the Compact were never triggered in the case *sub judice*, Petitioner's claims of ineffective assistance of counsel based on counsel's failure to insure that the Compact's provisions were followed are unavailing. Petitioner is not entitled to relief on this issue.

## IV. *Momon* Violations

Petitioner argues that he was denied his constitutional right to testify because the procedural guidelines set forth in *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) were not followed during his trial. Petitioner's challenge to the trial court's failure to conduct a *Momon* hearing has been waived. The issue was not presented to the trial court or raised on direct appeal. "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Tenn. Code Ann. § 40-30-106(g).

We will, however, address Petitioner's argument that his trial counsel rendered ineffective assistance by failing to follow the *Momon* procedures in order to ensure that Petitioner personally and voluntarily waived his right to testify. Although the post-conviction court addressed Petitioner's issue outside the parameters of an ineffective assistance of counsel challenge, the post-conviction court's analysis establishes a sufficient record by which we may determine whether or not Petitioner has met the two-prong *Strickland* test.

A defendant has a constitutional right, under both federal and state law, to testify. *Momon*, 18 S.W.3d at 157. Because the right to testify is a fundamental right, the right must be personally waived by a defendant. *Id*. at 161. "To ensure that the defendant's right to testify has been personally waived by the defendant, the court in *Momon* adopted procedural guidelines that call for defense counsel to request a jury-out hearing to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made." *State v. Posey*, 99 S.W.3d 141, 148 (Tenn. Crim. App. 2002) (citing *Momon*, 18 S.W.3d at 163).

"Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;
(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify."

*Momon*, 18 S.W.3d at 162.

The post-conviction court found that the record did not affirmatively reflect that Petitioner waived his right to testify or that the *Momon* procedures were followed. The post-conviction court found, however, that trial counsel had discussed Petitioner's right to testify with him on several occasions, and that Petitioner did not want to testify. Trial counsel said that it would not have been beneficial for Petitioner to testify because he would have been subject to impeachment by a statement he had given the police prior to trial. Trial counsel admitted that he simply "forgot" to conduct a *Momon* voir dire.

The post-conviction court found that although there had been a violation of the procedures set forth in *Momon,* and that there was not an affirmative showing that Petitioner had knowingly and voluntarily waived his right to testify, the error was harmless beyond a reasonable doubt. "[C]ourts should consider the following factors when determining whether the denial of the right to testify is harmless beyond a reasonable doubt: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; (4) the overall strength of the prosecution's case." *Id*. at 168.

The post-conviction court stated:

There were eyewitnesses to the crime. These witnesses testified to the involvement of [Petitioner]. There were also other witnesses who corroborated various aspects of the State's evidence. Had [Petitioner] . . . testified, [he] would not have removed [himself] from the scene of the crime nor would [he] have negated any material aspect of the State's evidence . . . . Also, . . . there was no evidence to corroborate the testimony that would have been given by [Petitioner], and [his] testimony would have been contradicted by several witnesses. Finally, the State had a very strong case against [Petitioner].

When a petitioner argues that his trial counsel's assistance was ineffective based on *Momon* violations, he or she must establish that his counsel's performance fell below "the range of competence demanded of attorneys in criminal cases," and that counsel's ineffective performance actually adversely impacted his defense. *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067; *Baxter*, 523 S.W.2d at 936.

*Momon* was filed on November 15, 1999. Petitioner's trial was held in March 2001, approximately sixteen months later. We conclude that trial counsel's failure to follow what was by

the time of Petitioner's trial a well-established procedure was deficient performance. We also conclude, however, that Petitioner has failed to show by clear and convincing evidence that he was prejudiced by trial counsel's omission.

The scope of what Petitioner's trial testimony would have been is not clear from the record. At the post-conviction hearing, Petitioner said that his testimony would have been beneficial because it would have given "the jury something to reweigh other than what they had." Petitioner said because there was no physical evidence, it would be his "testimony evidence versus the State's evidence." The details of his potential testimony, however, are lacking. The post-conviction court credited trial counsel's testimony that he discussed Petitioner's right to testify with him, and that Petitioner did not want to testify. Counsel said that the primary reason that Petitioner decided not to testify was because none of his co-defendants were going to testify. In addition, trial counsel said that he advised Petitioner in the end not to testify because the State had failed to introduce Petitioner's statement to the police that he was not at the club on the night of the shooting during its case-in-chief, and the statement might have been used to impeach Petitioner during his cross-examination.

Based on the foregoing, we find that Petitioner failed to show by clear and convincing evidence that he was prejudiced by his trial counsel's failure to follow the *Momon* procedures, and that counsel's failure to do so did not adversely impact his defense. Petitioner is not entitled to relief on this issue.

## V. Speedy Trial

Petitioner contends that his trial counsel's assistance was ineffective because he did not pursue a motion for a speedy trial after Petitioner pled guilty to the federal charges and was returned to State custody. The post-conviction court found that:

> [Petitioner was] indicted on June 8, 1999, and went to trial on March 17, 2001. For approximately eight months of this twenty-one month interval, [Petitioner was] in federal custody facing federal drug charges. Also, one year after [Petitioner was] indicted, a second indictment was issued charging two other defendants with the same murder. Additionally, for a period of approximately one year, the case was a death penalty case.

Petitioner conceded at the post-conviction hearing that his trial counsel had orally requested a speedy trial in court. Petitioner presented no evidence at the post-conviction hearing that he was prejudiced by the delay between his indictment and trial. The post-conviction court found that the delay in bringing Petitioner to trial was not unreasonable, and that Petitioner failed to show he was prejudiced by the delay.

A criminal defendant is guaranteed the right to a speedy trial under both the federal and the State constitutions. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *State v. Berry*, 141 S.W.3d 549, 568 (Tenn. 2004). In *Berry*, our Supreme Court stated that:

> In determining whether a defendant's right to a speedy trial has been compromised, four factors must be weighed: the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and any prejudice to the defendant caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State v. Simmonas,* 54 S.W.3d 755, 759 (Tenn. 2001); [*State v.*] *Utley*, 956 S.W.2d [489], 492 [(Tenn. 1997)]; [*State v.*] *Bishop*, 493 S.W.2d [81], 83-84 [(Tenn. 1973)]. The most important question, although not determinative in every case, is whether the delay caused any prejudice to the defendant. *Simmons*, 54 S.W.3d at 760; *State v. Carico*, 968 S.W.2d 280, 285 (Tenn. 1998).

*Berry*, 141 S.W.3d at 568.

A delay which is considered presumptively prejudicial must approach one year to trigger application of the *Barker* factors, which the case *sub judice* does. *Id.* at 569 (citations omitted). There is evidence in the record that Petitioner asserted his right to a speedy trial by his trial counsel making an oral request for a speedy trial in open court. Further, Petitioner presented no specific examples of how he was prejudiced by the delay. Faced with a bare allegation that his trial counsel was ineffective for failing to pursue further a motion for a speedy trial, we cannot conclude that Petitioner has sustained his burden of showing by clear and convincing evidence that the was prejudiced by his trial counsel's conduct in this regard. Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE