Arthur Edward BUGGS, Petitioner,

v.

Joseph H. CRABTREE, Warden, FCI Sheridan, Respondent.

No. Civ.A. 97–615–CO.

United States District Court, D. Oregon.

Sept. 11, 1998.

Christine S. Dahl, Assistant Federal Public Defender, Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, OR, for petitioner.

Kristine Olson, United States Attorney, Craig C. Casey, Assistant United States Attorney, Portland, OR, for respondent.

## ORDER

COONEY, United States Magistrate Judge.

Petitioner Arthur Edward Buggs brought this habeas corpus proceeding pursuant to 28 U.S.C. § 2241, alleging that he was being denied pre-trial and post-trial credit, and seeking 317 days credit toward his federal sentence. Respondent government filed an answer in which it requests that petitioner's petition be denied and the action dismissed. Petitioner filed a motion for immediate release or, in the alternative, conditional release pending disposition. Following a telephone hearing, and a court hearing held August 19, 1998, the court ordered that petitioner be released on certain conditions (# 24). The parties have consented on the record to entry of final judgment by a magistrate judge. 28 U.S.C. § 636(c). For the reasons set forth below, petitioner Buggs' petition is granted.

## I. BACKGROUND

On October 20, 1993, a federal indictment was filed and an arrest warrant was issued, Case No. CR–93–266–MFN. (J., Gov. Answer Ex. A Attach. 1; Docket, Hr'g Ex. C1.)

On November 29, 1993, the Spokane Superior Court issued a bench warrant in Case No. 93–1–00893–8 for violation of previously imposed sentence. (8–7–98 Stipulated facts; Order for Bench Warrant, 8–10–98 Gov. fax no. 2 Ex.)

Buggs was arrested by the Spokane Police Department on December 3, 1993, and housed in Spokane County Jail. (8–7–98 Stipulated Facts; Bench Warrant, Hr'g Exs. C2; Spokane Police–Sheriff General Report, Hr'g Ex. D.)

On December 14, 1993, an information was filed in Spokane Superior Court, Case No. 93–1–02004–1, and warrant was issued. (Docket, Hr'g Ex. B1.)

On December 15, 1993, a writ of habeas corpus ad prosequendum was issued for appearance in federal court in Case No. CR 93–266–WFN on December 21, 1993. (Writ, 8–10–98 Gov. fax no. 1 Ex.; Docket, Hr'g Ex. A1.) Attorney Roger Peven was appointed on December 21, 1993, to represent Buggs in federal case no. CR 93–266–WFN. (Peven Aff., Hr'g Ex. F.) Buggs appeared in federal court for arraignment. (8–7–98 Stipulated facts; Docket, Hr'g Ex. A1; Writ, 8–10–98 Gov. fax no. 1 Ex.; USMS Custody and Detention Report, Gov Answer Ex. A Attach. 2; 8–10–98 Gov. fax nos. 1, 2 Exs.) The federal court issued an Order of Temporary Detention on December 21, 1993, (Order of Temporary Detention Pending Hearing, Hr'g Ex. A3), and an Order of Detention on December 23, 1993, (Order of Detention, Hr'g Ex. A4). On March 18, 1994, federal sentence was imposed. (8–7–98 Stipulated facts; J., Gov. Answer Ex. A Attach. 1; see USMS Custody and Detention Report, Gov. Answer Ex. A Attach. 2.) On March 25, 1994, judgment was entered in the federal case, whereby Buggs was "committed to the custody of the United States Bureau of Prisons" and "remanded to the custody of the United States Marshal." (J., Gov. Answer Ex. A Attach. 1.)

Buggs was arraigned on state drug charges in Case No. 93–1–02004–1 on June 2, 1994. (8–7–98 Stipulated facts; Docket, Hr'g

Ex. B1; Order Setting Trial Date, Hr'g Ex. B2.) On June 30, 1994, Buggs entered a plea of guilty in Case No. 93–1–02004–1. In the Statement of Defendant on Plea of Guilty, the prosecuting attorney recommended that the sentence imposed run "concurrent to the federal sentence presently being served." The Statement was signed by Buggs, the prosecuting attorney, Buggs' attorney, and the judge. (Statement of Defendant, Hr'g Ex. B3.) Buggs was sentenced by the state court on June 30, 1994, sentence to run "concurrent" with federal sentence, and a warrant of commitment was issued stating the sentence was to run "concurrently" with the sentence in the federal case. (8–7–98 Stipulated facts; J., Pet'r Mem. in Supp.Ex. B; Docket, Hr'g Ex. B1; Warrant of Commitment, Pet'r Mem. in Supp.Ex. B; Hr'g Ex. B4.)

In Case No. 93–1–00893–3, the state court ordered that supervision be reinstated on July 13, 1994, with the sentence to run "concurrently" to the federal sentence. (8–7–98 Stipulated facts; Order Reinstating Supervision, Pet'r Mem. In Supp.Ex. C; Hr'g Ex. C3; Docket, Hr'g Ex. C1.) The Order Reinstating Supervision was signed by the judge, the deputy prosecutor, and Buggs' attorney. (Order Reinstating Supervision, Pet'r Mem. In Supp.Ex. C; Hr'g Ex. C3.)

State jail records and U.S. Marshal's records show that Buggs' state sentence was completed on November 9, 1994, and that he was released from state custody. (Jail Time Certification, Gov. Answer Ex. A Attach. A; USMS Custody and Detention Report, Gov. Answer Ex. A Attach. A; Gov. fax nos. 1, 2.) On November 16, 1994, Buggs left Spokane County Jail and arrived at federal prison at Sheridan. (8–7–98 Stipulated facts; Jail Time Certification, Gov. Answer Ex. A Attach. 2; USMS Custody and Detention Report, Gov. Answer Ex. A Attach. 2; 8–10–98 Gov. fax nos. 1, 2; Hr'g Ex. D.) Until Buggs was transferred to FCI Sheridan, he was in Spokane County Jail throughout both the state and federal proceedings. (8–7–98 Pet'r fax; 8–10–98 Gov. fax nos. 1, 2.)

## II. *DISCUSSION*

Respondent argues that petitioner is not entitled to prior custody credit toward his federal sentence; and that petitioner should be required to exhaust administrative remedies, and such failure has resulted in a procedural default. Petitioner contends that considerations of full faith and credit, and comity, entitle him to custody credit for the state sentences imposed after commencement of his federal sentence which were expressly made concurrent to the federal sentence; and that the court should dispense with the discretionary prerequisite of administrative remedies in this case.

*Exhaustion of administrative remedies*

■ The government contends that petitioner has failed to exhaust his administrative remedies and, therefore, his petition should be denied. Petitioner Buggs argues that pursuing his administrative remedies would be futile, and the court should not require exhaustion.

■ The government concedes that exhaustion of administrative remedies is not a jurisdictional prerequisite to habeas review. *Hines v. Crabtree,* 935 F.Supp. 1104, 1107 (D.Or.1996); *Dougherty v. Crabtree,* 812 F.Supp. 1089, 1091 (D.Or.1991), *aff'd,* 981 F.2d 1258 (1992); *see United States v. Woods,* 888 F.2d 653, 654 (10th Cir.1989), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990).

The court notes that the government's argument that petitioner Buggs should exhaust his administrative remedies was made in November 1997, when it filed its answer. In its answer, the government asserts that dismissing the action without prejudice would not harm petitioner Buggs because he would not be eligible for release until July 1998 if credit were awarded; the government asserts that petitioner would thus have time to exhaust his administrative remedies. Petitioner contends that it would be futile for him to exhaust administrative remedies since the government has announced its disagreement with his request for credit against his federal sentence, and he would be irreparably harmed if he were required to exhaust administrative remedies. Petitioner points out that the government agrees that he would be entitled to immediate release if credit was given.

The court finds in the circumstances that requiring petitioner to exhaust his administrative remedies at this point would be futile. Moreover, petitioner Buggs would be irreparably harmed if he were required to exhaust at this time. Accordingly, the court exercises its discretion and finds that petitioner Buggs need not exhaust his administrative remedies in this matter. *See Hines,* 935 F.Supp. at 1107 [court found it would be futile for petitioner to pursue administrative remedies, and if petitioner was eligible for a sentence reduction, he might be entitled to immediate relief]; *Dougherty,* 812 F.Supp. at 1091 [court concluded it would be futile to require petitioner to make further administrative efforts and, "More persuasively," petitioner might be entitled to some immediate relief]. The court will address petitioner Buggs' petition on the merits.

*Entitlement to custody credit*

■ The government argues that, under 18 U.S.C. § 3585(b), the BOP has properly denied petitioner the 317 days custody credit he seeks. The government contends that, according to the BOP, petitioner Buggs was in state custody serving a state sentence until November 9, 1994, when he was released from state custody and, because petitioner had received credit toward his state sentence from December 21, 1993, to November 9, 1994, he cannot receive double credit for his detention time. It further argues that district court judges have no authority to grant credit to petitioners for time spent in jail prior to the commencement of their sentences. Petitioner Buggs argues that the BOP is required to honor the concurrent sentences imposed by the state courts. He contends that a federal sentence does not automatically trump a state sentence, but that state and federal governments interact with each other as equal sovereigns. He asserts that this dual sovereignty doctrine acknowledges and protects the rights of each sovereign to impose exactly as much punishment, and as little punishment, as the sovereign desires. Petitioner contends that the first sovereign here, the United States, has no cause to complain about the concurrent sentences imposed by the state court, and has no right to tell the state how much, or how little, punishment it should exact. Petitioner argues that considerations of comity

and full faith and credit require the BOP to credit him with the 317 days custody served. He contends that, on indistinguishable facts, Magistrate Judge Stewart, in *Cozine v. Crabtree,* No. CV 97–1510–ST, slip op. (D.Or. July 2, 1998), ordered the BOP to recalculate Cozine's release date and ordered him released shortly thereafter.

As an initial matter, the court notes that the parties seem to agree that if 317 days is credited, petitioner Buggs' release date would have been on or about July 24, 1998. (Pet'r Mot.; Lake Aff., Gov. Answer Ex. A.) This was confirmed at the telephone hearing on petitioner's motion for release.

At the court hearing of this matter, the parties contended, and the court agreed, that the issue in this case is one of primary jurisdiction. The government contends that the applicable rule is that the first sovereign to arrest has primary jurisdiction, until that sovereign relinquishes jurisdiction. It asserts that, as the first sovereign to arrest petitioner Buggs, the state of Washington had primary jurisdiction. It argues that such primary jurisdiction is shown by the writ of habeas corpus ad prosequendum issued by the federal court on December 15, 1993. It asserts that, under the writ, petitioner Buggs was returned to state custody on March 28, 1994. It contends that the record shows that both the state and federal authorities operated on the supposition that the state had primary custody until it released Buggs on November 9, 1994, to commence serving his federal sentence.

Petitioner Buggs contends that; although the state of Washington was the first sovereign to arrest him, the state relinquished any power conferred by the arrest by failing to act on the charge for which he was arrested and failing to bring him into court in the other state case commenced after his arrest. Petitioner asserts that the record shows that the state of Washington recognized such relinquishment by the state by statements of the judges and the prosecuting attorneys, in each of the two state cases which were pending. He asserts, therefore, that both the executive branch and the judicial branch acknowledged and referred to the relinquish-

ment of jurisdiction by the state of Washington.

The United States Supreme Court in *Ponzi v. Fessenden*, 258 U.S. 254, 260, 42 S.Ct. 309, 66 L.Ed. 607 (1922), stated:

> The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. . . .

"Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns. Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." *United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir.1980) (citing *Ponzi*, 258 U.S. at 261–62, 42 S.Ct. 309); *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir.1991). The sovereign with priority of jurisdiction may elect under the doctrine of comity to relinquish jurisdiction to another sovereign. *Warren*, 610 F.2d at 685.

On the record before it, the court finds that the state of Washington relinquished primary jurisdiction it had attained by arresting petitioner Buggs on a state warrant, by not acting on either of the state charges against him until over six months had passed, and the federal court had tried and sentenced petitioner on the federal charges. The record shows that petitioner was arrested on December 3, 1993, on a bench warrant for probation violation, Case No. 93–1–00893–8, and no action was taken by the court in that case until July 13, 1994, when the court ordered that supervision be reinstated. In the Order Reinstating Supervision, filed July 14, 1994, the state court ordered that supervision was reinstated on condition that he serve confinement "concurrently to confinement imposed in cause number 93–1–02004–1 [imposed June 30, 1994, *see infra* ], and concurrently to federal court sentences presently being served, with credit for time served for time from and including March 28, 1994." (Order Reinstating Supervision, Hr'g Ex. C3.) The Order was signed by the state judge and both the deputy prosecutor and petitioner's attorney. The other pending state case, Case No. 93–1–02004–1 was commenced on December 14, 1993, after Buggs' arrest, when an information was filed and a warrant issued. No action was taken in that case until June 2, 1994, when petitioner Buggs was arraigned and trial was set. Petitioner entered a plea of guilty on June 30, 1994, and sentence was imposed. In the Statement of Defendant on Plea of Guilty to a Felony, filed June 30, 1994, at 6(f), it states: "IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA, I UNDERSTAND THAT: [par.] (f) The prosecuting attorney will make the following recommendation to the court: . . .; recommend 12 months' sentence concurrent to federal sentence presently being served; . . . ." (Statement of Defendant, Hr'g Ex. B3 at 3.) Also noted in the Statement at the bottom of the page referenced is the following: "This matter pursuant to RCW 9.94.-A.400(3) would normally run concurrently to the federal court sentence referenced above." (Hearing Ex. B3 at 3.) The Statement is signed by petitioner, the deputy prosecuting attorney, petitioner's attorney, and the state judge.

It seems clear from the statements made in each of these cases—that the sentences imposed were to run concurrently to the federal sentence already being served—that at the time that each of these sentences was imposed, in June and July 1994, the prosecuting attorneys and the judges believed that the federal sentence imposed in March 1994 was, at that time, being served by Buggs. This belief is borne out by the attorney appointed to represent petitioner in the federal case, Case No. CR–93–266–WFN, Roger Peven. Mr. Peven states that he was appointed to represent petitioner Buggs on December 21, 1993; at the time of his appointment and continuing through Buggs' transfer to FCI Sheridan in November 1994, he "believed Mr. Buggs was in the primary custody of the federal government"; that he was aware of the state sentences imposed subsequent to disposition of the federal charges which were to run concurrent with the federal sentence; and that he knew of no impediment to petitioner receiving concurrent time on his state

charges and "advised him accordingly." (Peven Aff., Hr'g Ex. F.)

The government relies heavily on the fact that the federal court issued a writ of habeas corpus ad prosequendum for petitioner Buggs' appearance in federal court on December 21, 1993, which it contends shows that federal authorities believed Buggs was in state custody. It also points to United States Marshal's records which indicate that Buggs was in federal custody from December 21, 1993, until he was released and the writ was returned, on March 28, 1994.

That the federal court issued a writ for petitioner's appearance on December 21, 1993, following his arrest by state authorities on December 3, 1993, is not dispositive of the question of whether the state relinquished its primary jurisdiction. Nor are the records maintained by the U.S. Marshal determinative. *See Smith v. Swope,* 91 F.2d 260 (9th Cir.1937); *United States v. Croft,* 450 F.2d 1094 (6th Cir.1971); *see Kiendra v. Hadden,* 763 F.2d 69 (2d Cir.1985); *see also Cozine v. Crabtree,* 15 F.Supp.2d 997, 1006, 1007, 1016 (D.Or.1998). What is clear in the record is that following petitioner Buggs' arrest by state authorities on December 3, 1993, petitioner's first appearance was in federal court on December 21, 1993, pursuant to the writ issued by the federal court. Following his appearance, the federal court ordered petitioner detained and committed him to the custody of the U.S. Marshal for confinement. On March 18, 1994, the federal court imposed sentence, and on March 25, 1994, judgment was entered, and petitioner was "committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 60 months ...," and petitioner was "remanded to the custody of the United States Marshal." (J., Gov. Answer Ex. A Attach. 1.) The government agrees that petitioner was not arraigned on state drug charges in Case No. 93–1–02004–1, commenced on December 14, 1993, after his arrest, until June 2, 1994, and on June 30, 1994, petitioner was sentenced "concurrent" with his federal sentence. (8–7–98 Stipulated Facts; J., Pet'r Mem. in Supp.Ex. B; Docket, Hr'g Ex. B1; Statement of Defendant, Hr'g Ex. B3; Warrant of Commitment, Pet'r Mem. in Supp.Ex. B; Hr'g Ex. B4; Docket, Hr'g Ex. B1.) In that case, the state prosecuting attorney signed a statement that she would recommend to the court that the sentence imposed there be made concurrent "to federal sentence presently being served." (Statement of Defendant, Hr'g Ex. B3.) And on the sentence violation, for which petitioner was arrested in December 1993, nothing occurred in that case until July 13, 1994, when the court ordered that supervision be reinstated, and the sentence run "concurrently to confinement imposed in cause number 93–1–02004–1, and concurrently to federal court sentences presently being served...." (8–7–98 Stipulated Facts; Order Reinstating Supervision, Pet'r Mem. in Supp.Ex. C; Hr'g Ex. C3; Docket, Hr'g Ex. C1.) The Order Reinstating Supervision, which states that the sentence was to run concurrently to "federal court sentences presently being served" was signed by the state deputy prosecutor. (Order Reinstating Supervision, Pet'r Mem. in Supp.Ex. C; Hr'g Ex. C3.) Accordingly, on this record, it seems clear to the court that at some point between the end of December 1993, and June 1994, the state court relinquished primary jurisdiction over petitioner Buggs, which was recognized by the state court in both proceedings pending at the time that petitioner appeared in federal court in December 1993 and March 1994. *See Gillman v. Saxby,* 392 F.Supp. 1070, 1072 (D.Haw.1975) ["It seems obvious that if petitioner had been incarcerated in federal prison after being sentenced in New York, both sentences would now be running concurrently as ordered by the state judge. Further, it is clear that the District Court judge was fully aware of the pending state charges when he ordered mittimus forthwith.... This court fails to understand why the state and federal officials involved failed to comply with the clear order of both judges."]; *Shabazz v. Carroll,* 814 F.2d 1321, 1323–24, *vac'd in part on rehearing [for lack of jurisdiction],* 833 F.2d 149 (9th Cir.1987) ["The state sentence provided that it should run concurrently with the federal sentence.... In order to accomplish this, Shabazz should have been returned to federal custody to serve his federal sentence. The state authorities failed to return him.... The intent of the state sentencing order was clear. While a state court has no power to modify a federal sentence, it

would be unfair to Shabazz and serve no federal purpose to hold that the error of state authorities prevented the intent of the state sentence from being carried out. Accordingly, we hold that the time Shabazz spent in state prison should be credited against his federal sentence."]; *cf. Del Guzzi v. United States,* 980 F.2d 1269 (9th Cir., 1992) (per curiam).

The government has maintained throughout this proceeding that, under 18 U.S.C. § 3585, because Buggs was given credit by the state, the BOP may not give him credit for any time before the federal sentence commenced on November 9, 1994. 18 U.S.C. § 3585, provides in pertinent part:

> (b) Credit for prior custody—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

Despite the language of the statute, other courts have allowed credit where the state has also allowed credit against the same time. *Kayfez v. Gasele,* 993 F.2d 1288 (7th Cir.1993); *United States v. Benefield,* 942 F.2d 60 (1st Cir.1991) ["While we appreciate that multiple credit for the same period of presentence incarceration is prohibited under certain circumstances, see 18 U.S.C. § 3585(b) [ ], an across-the-board prohibition under all circumstances would lead to illogical results. For example, in the instant case any credit granted by the state court was rendered meaningless when not similarly reflected in Benefield's concurrent federal sentence...."]; *see United States v. Drake,* 49 F.3d 1438 (9th Cir.1995); *see also Cozine,* slip op. At 7, 9, 50–53 (and cases cited). In *Kayfez,* 993 F.2d at 1290, the state sentence was ordered to run concurrent with the federal sentence. Petitioner there argued that because his sentences were concurrent, crediting only the state sentence would not reduce his period of actual imprisonment. As here, the government only argued that petitioner could not receive credit because the time had already been credited by the state. The court found: "Under the circumstances, where further state proceedings were contemplated when the [state] January 12 concurrent sentence was vacated, we think it realistic and reasonable to consider the allowance made in the October state sentence and the credit therein allowed."

Apart from the court's finding regarding primary jurisdiction discussed above, the court finds, alternatively, on the record before it, that credit should be given by the BOP in this case. Both state courts imposed sentences to run concurrent to the federal sentence, the prosecuting attorneys in each of the cases, the state judge in Case No.93–1–00893–8, and the attorney appointed to represent petitioner in the federal case, all believed that the federal sentence was being served in June and July 1994. Failing to honor the concurrent sentences imposed by the state courts would lead to "illogical results" and an "unsuitable result" in this matter. *Benefield,* 942 F.2d at 66–67. Accordingly, the court finds that granting credit will honor and give effect to the sentences imposed by the state courts.

### III. *ORDER*

Based upon the foregoing, it is ordered that petitioner Buggs' petition for habeas corpus is granted, and respondent government's request that this action be dismissed is denied. The BOP shall recalculate petitioner Buggs' federal sentence, which the government has agreed would result in a federal sentence release date of on or about July 24, 1998, or immediate release to post-prison supervision.

IT IS SO ORDERED.