OPINION OF THE COURT
Plummer E. Lott, J.
This case presents the issue whether the New York State Department of Correctional Services may ignore an order of a Federal District Court judge to run a federal sentence concurrently with a State sentence. The issue involves interpretations of a New York statute, rules regarding comity, and the *260 supremacy provision and the Full Faith and Credit Clause of the Federal Constitution.
Background
On March 3, 1995, the defendant pleaded guilty to criminal possession of a weapon in the third degree.[1] As part of the plea bargain this court promised the defendant that it would sentence him to the minimum period of incarceration permitted by law for a second violent felon, i.e., a term of imprisonment having a minimum of 2V2 years and a maximum of five years. Because of the impending Easter holiday and the defendant’s desire to spend the time with his family, sentencing was scheduled for May 2, 1995. The defendant’s bail was continued.
On April 19, 1995, while awaiting sentencing, the defendant sold crack to a federal confidential informant. He also agreed to make an additional sale of crack to the informant on May 1, 1995. On May 1, 1995, because the defendant’s supplier could not supply the agreed-upon drugs and the sale could not be immediately consummated, agents of the Federal Government arrested the defendant and charged him with conspiracy to possess with intent to distribute cocaine base.
On June 22, 1995, the federal authorities produced the defendant in this court for sentencing. The court then sentenced the defendant as previously promised.
On May 31, 1996, United States District Court Judge Block accepted the defendant’s guilty plea and sentenced the defendant to the custody of the Bureau of Prisons for 70 months to run concurrently with the State sentence, the minimum sentence under the federal guidelines given the defendant’s category. The court stated that after completing his State incarceration, if it be less than 70 months, then he would be returned to the Federal Government for completion of the balance of the jail portion of its sentence.
The defendant first served his federal sentence and was then returned to New York for service of the State sentence. The New York State Department of Correctional Services has refused to credit the defendant with any jail time served in a federal facility.
As the United States Court of Appeals, Second Circuit, said, “[t]he law governing prisoners subject to multiple sentences, *261 particularly prisoners subject to multiple state and. federal sentences, is hardly a model of clarity” (McCarthy v Doe, 146 F3d 118, 120 [2d Cir]).
Before considering the principles of comity and federal constitutional law, the court should first look to New York State statutes so as to avoid, if possible, any constitutional problems (see, Matter of Beach v Shanley, 62 NY2d 241, 254 [courts should not decide constitutional questions, if the matter can be disposed of on a nonconstitutional basis]).
Penal Law § 70.25
Penal Law § 70.25 governs whenever multiple punishments are imposed. Subdivision (4) reads as follows:
“When a person, who is subject to any undischarged term of imprisonment imposed at a previous time by a court of another jurisdiction, is sentenced to an additional term or terms of imprisonment by a court of this state, the sentence or sentences imposed by the court of this state, subject to the provisions of subdivisions one, two and three of this section, shall run either concurrently or consecutively with respect to such undischarged term in such manner as the court directs at the time of sentence. If the court of this state does not specify the manner in which a sentence imposed by it is to run, the sentence or sentences shall run consecutively.”
The last sentence of this subdivision states without qualification that where a court of this State is silent as to whether a sentence runs concurrently with a sentence from another jurisdiction, then the sentences are to run consecutively with the foreign sentence. However, this subdivision does not apply to this case. Reading the entire section as a whole unit, it is clear that the last sentence only applies when at the time of New York’s sentencing there is an “undischarged term of imprisonment imposed at a previous time by a court of another jurisdiction” (see, McCarthy v Doe, supra, 146 F3d, at 121-122).
At common law it was presumed that if a court imposing sentence failed to state whether a period of imprisonment was to run concurrently or consecutively with another sentence simultaneously or previously imposed by another court in the same jurisdiction, then the terms of incarceration were deemed to run concurrently with each other (People ex rel. Winelander v Denno, 9 AD2d 898, 899). This rule did not apply to sen *262 tences of imprisonment imposed by courts of another jurisdiction (id.; People ex rel. Kendall v Follette, 47 AD2d 546, 548). Thus, where a court is silent and the applicable statutes are silent as to whether a sentence is concurrent or consecutive with a sentence imposed by a different sovereignty, then the law presumes that the sentences run consecutively to one another (id.; Thomas v Whalen, 962 F2d 358, 362 n 6 [4th Cir]; Gomori v Arnold, 533 F2d 871, 875 [3d Cir]; State v Petersen, 305 Minn 478, 483, 235 NW2d 801, 804; Grimes v Greer, 223 Ga 628, 157 SE2d 260; Santifer v State, 1976 WL 360, 1976 Ark LEXIS 2001 [Ark Sup Ct, Feb. 2, 1976, Jones, J.]; Herman v Brewer, 193 NW2d 540, 544 [Iowa]; People ex rel. Hesley v Ragen, 396 Ill 554, 562-563, 72 NE2d 311, 314-315; see also, Annotation, Right to Credit on State Sentence 90 ALR3d 408, 412, § 4 [b] [cases cited]). This is consistent with New York’s policy that “[s]ervice in a Federal prison will not expiate an offense against the dignity of the State” (People v Ingher, 248 NY 302, 306).
Interpreting the statute as giving binding effect to a foreign jurisdiction’s sentence would be inconsistent with New York’s common law, and infringe on New York’s sovereign right to implement its penal sanctions. Absent evidence that the Legislature intended to abrogate the common law, this court declines to interpret the statute in derogation thereof.
The court finds that the New York State Department of Correctional Services’ determination that the sentences were to run consecutively with each other was rational in light of the common-law presumption of consecutiveness of the sentences.
The court holds, in accordance with New York’s common law, that where a New York State court is silent as to whether a sentence runs concurrently or consecutively with a foreign sentence, the sentence is presumed to run consecutively with such foreign sentence.
The court must now consider the issue of comity.
Comity
In Ponzi v Fessenden (258 US 254), the United States Supreme Court identified the issue as follows (at 259):
“We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people *263 for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.”
The United States Supreme Court then set forth the following rule (at 260):
. “The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose.”
Thus, the jurisdiction “which first takes subject matter of the litigation into its control * * * must be permitted to exhaust its remedy” (see also, United States v Evans, 159 F3d 908, 992 [4th Cir]; State v Yee, 55 Ohio App 3d 88 n 2, 563 NE2d 54, 55; People v Nokes, 25 Cal App 2d 259, 260, 77 P2d 243).
The federal courts have interpreted this to mean that the jurisdiction which first arrests a defendant has “primary” jurisdiction (In re Liberatore, 574 F2d 78, 89 [2d Cir]; Thomas v Brewer, 923 F2d 1361, 1365 [9th Cir]; Zerbst v McPike, 97 F2d 253, 254 [5th Cir]; Millard v Roach, 631 A2d 1217, 1222 [DC Cir]; Shumate v United States, 893 F Supp 137, 139; Buggs v Crabtree, 32 F Supp 2d 1215, 1219; United States v Ayscue, 187 F Supp 946, 947).
In this case, regardless of whether the standard is measured according to the principle that the first sovereignty to obtain subject matter jurisdiction or the first to arrest the defendant is the “primary” jurisdiction, New York had “primary” jurisdiction.[2] This gave New York the right to have custody of the defendant at any time it desired, and to have the defendant serve his sentence to completion before any other jurisdiction took action.
The fact that defendant was released on bail by New York neither alters the fact that New York continued to have subject *264 matter or personal jurisdiction over the defendant nor does it alter the fact that New York arrested the defendant first. A person released on bail remains under the custody and jurisdiction of the authority which released him and is seized for trial (see, Albright v Oliver, 510 US 266, 277-279 [Ginsburg, J., concurring]; see also, Hensley v Municipal Ct, 411 US 345, 348-352 [a person released on bail is in “custody” for the purposes of habeas corpus]).
As a policy matter, it is difficult to imagine why New York would lose or forfeit primary jurisdiction by releasing the defendant on bail. At the time the defendant was released on bail, there existed no federal crime and no federal jurisdiction over the person of the defendant. How then could New York have lost or forfeited primary jurisdiction to the Federal Government?
Further, punishing a State for complying with the Federal Constitution mandates would violate principles of fairness. The Federal Constitution prohibits a State from keeping a defendant in jail prior to conviction on excessive bail. When a State sets a bail that a defendant can afford to post, the State is complying with the Federal Constitution. How can this act become a forfeiture of the State’s right to “primary” jurisdiction? In this case bail was set prior to any conviction and the court accorded the defendant his rights under the Federal Constitution. New York State should not be punished by the loss of its “primary” jurisdiction because it obeyed the law.
The court finds that New York was the primary jurisdiction in this matter (United States v Croft, 450 F2d 1094, 1098; see, Harkins v Lauf, 532 SW2d 459, 465 [Mo] [Bardgett, J., dissenting]).[3] Indeed, United States District Court Judge Block recognized this fact when he sentenced the defendant to concur *265 rent time of incarceration with New York’s sentence (United States v Croft, supra, 450 F2d, at 1096, 1099; Millard v Roach, supra, 631 A2d, at 1223 [DC Cir]).
The fact that a State is a “primary” jurisdiction does not mean that it should not deliver custody of a defendant to another sovereignty where the defendant has another pending matter. The primary jurisdiction is generally encouraged to permit a nonprimary or secondary jurisdiction custody (“relinquish” or “yield” possession — see footnote 3 of this decision) of a defendant for the purposes of trial or disposition of the criminal matter pending in such jurisdiction (Ponzi v Fessenden, 258 US 254, supra; People ex rel. Rainone v Murphy, 1 NY2d 367, 371-372). When a “primary” jurisdiction gives up control of a defendant under these conditions, it does not lose its rights as the “primary” jurisdiction and may insist upon the return of the defendant at any time (id.; Zerbst v McPike, 97 F2d, supra, at 254).
In this case the New York State Department of Correctional Services correctly permitted the Federal Government to maintain custody and control over the defendant until the United States District Court sentenced the defendant. The defendant had no right to complain about this. A defendant who commits crimes in two different jurisdictions cannot complain about the order of trial or sentence (id.).
*266 The issue now facing the court is whether under comity the New York State Department of Correctional Services should have held that the sentences run concurrently with each other and demanded the return of the defendant to New York.
Comity does not require a primary jurisdiction to honor the order of a nonprimary or secondary sovereign to run the non-primary or secondary jurisdiction’s sentence concurrently with that of the primary sovereign (Pinaud v James, 851 F2d 27, 30 [2d Cir]; Thomas v Whalen, 962 F2d 358, 362 [4th Cir]; Opela v United States, 415 F2d 231, 232 [5th Cir]; United States v Custard, 230 F3d 1360 [6th Cir]; Jake v Herschberger, 173 F3d 1059, 1065 [7th Cir]; United States v Smith, 972 F2d 243, 244 [8th Cir]; United States v Clayton, 927 F2d 491, 493 [9th Cir]; Bloomgren v Belaski, 948 F2d 688, 690-691 [10th Cir]; Finch v Vaughan, 67 F3d 909, 915 [11th Cir]). The reason for this is explained in Jake v Herschberger (173 F3d, supra, at 10651066 [7th Cir]) as follows:
“The first bedrock principle that we must recognize in this case is that where an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns. Jeter v. Keohane, 739 F.2d 257, 258 (7th Cir. 1984) (citing Ponzi v. Fessenden, 258 U.S. 254, 262 * * * (1922)). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about her decisions * * * A corollary to this principle is that a determination as to concurrence of sentence made by one sovereign does not bind the other. A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, ‘ “compel the federal government to grant a concurrent sentence.” ’ Pinaud v. James, 851 F.2d 27, 30 (2d Cir. 1988) (quoting United States v. Sackinger, 704 F.2d 29, 32 (2d Cir. 1983)); see also, Del Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir. 1992) (state judge ordering sentence concurrent with federal sentence and recommending immediate transport to federal authorities has no power to compel federal government to grant concurrent sentence or credit time served in state prison). Indeed, under the prior statutory scheme, we interpreted the authority of the Attorney General to designate the place of confinement of federal *267 prisoners to be broad enough that a federal court’s determination as to concurrence of a federal sentence with a prior state sentence was not binding on the Attorney General; such a federal sentence was a recommendation to the Attorney General that need not be heeded. United States v. Aleman, 609 F.2d 298, 309 (7th Cir. 1979); Montos, 261 F.2d at 40 (federal court designation that sentence was to be concurrent with prior state sentence was ‘surplusage’ and of no effect); see also, United States v. Myers, 451 F.2d 402, 403 (9th Cir. 1972). Obviously, then, Jake’s first argument must fail. The state court’s designation of his state sentence as concurrent with his prior federal sentence created no obligation on the Attorney General to provide him with credit for time served in the state prison.”
Comity recognizes the independence of the Federal Government from the State government and vice versa in sentencing a prisoner for crimes committed within the jurisdiction of each sovereign (United States v Smith, 972 F2d, supra, at 244 [8th Cir]). As stated in the above quote from Jake, “a determination as to concurrence of sentence made by one sovereign does not bind the other.”
The New York State Department of Correctional Services did not violate comity by finding that New York’s sentence run consecutively with the federal sentence and acted properly in failing to demand that the Federal Government return the defendant to this State after sentencing. Had the Federal Government ceded custody of the defendant to New York and had New York accepted custody of the defendant, then New York’s order that the sentences run consecutively with each would have been rendered void by the Federal Government’s order.
Supremacy Clause
Article VI (cl [2]) of the United States Constitution, as is relevant, reads as follows:
“This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
The text of the Supremacy Clause enshrines as “the supreme Law of the Land” only those federal acts that accord with the *268 constitutional design (Alden v Maine, 527 US 706, 731; Printz v United States, 521 US 898, 924-925). Both the national government and the State governments are independent entities within the spheres of powers granted them by the United States Constitution (Alden v Maine, supra, 527 US, at 714-715; Printz v United States, supra, 521 US, at 920-921).
Under the Federal Constitution, it is the States which have primary authority to enact and enforce criminal law (United States v Lopez, 514 US 549, 561 n 3, quoting Brecht v Abrahamson, 507 US 619, 635, quoting Engle v Isaac, 456 US 107, 128). Thus, notwithstanding that the Federal Government has prohibited a particular criminal activity, the States, as independent sovereignties, may prohibit the identical activity without violating the United States Constitution (see, United States v Wheeler, 435 US 313; Abbate v United States, 359 US 187; Bartkus v Illinois, 359 US 121; United States v Lanza, 260 US 377).
Because in the area of criminal law the States are primary and are independent from the national government, the Supremacy Clause does not require New York to comply with a federal sentence directive that a State and federal sentence run concurrently. As indicated above, in the section designated “comity,” where two independent jurisdictions act under powers granted them by the United States Constitution, each jurisdiction is free to enforce its criminal laws without regard to another jurisdiction’s order or decision. No jurisdiction is superior to the other. Indeed, in criminal law, the States are “primary” to the Federal Government (United States v Lopez, supra, 514 US, at 561 n 3, quoting Brecht v Abrahamson, supra, 507 US, at 635, quoting Engle v Isaac, 456 US 107, 128).
Full Faith and Credit
Article IV, § 1 of the United States Constitution provides that:
“Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.”
In Farmland Dairies v Barber (65 NY2d 51, 56-57), the Court stated:
“The courts have stated as a general proposition that criminal judgments are not entitled to full *269 faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it (see, Nelson v George, 399 US 224). The rationale for this exception to the constitutional requirement is that each sovereignty is free to determine what conduct shall be proscribed within its jurisdiction and the wrong committed by violating such proscription is local, not transitory. The penal laws within the exception are those which seek to redress wrongs done to the public generally (Huntington v Attrill, 146 US 657, 668). Thus, States have denied recognition to foreign judgments relied upon by one State to recover penalties assessed against a criminal defendant found within their boundaries (see, e.g., Wisconsin v Pelican Ins. Co., 127 US 265, 290; but cf. Milwaukee County v White Co., 296 US 268).”
For this reason a State need not give full faith and credit to another jurisdiction’s directive that sentences run concurrently with each other (Chailfoux v Commissioner of Correction, 375 Mass 424, 427-428, 377 NE2d 923; Breeden v New Jersey Dept. of Corrections, 132 NJ 457, 464, 625 A2d 1125, 1128; see, Barker v State, 62 Ohio St 2d 35, 38-40, 402 NE2d 550, 552-553; Gillis v State, 333 Md 69, 76-78, 633 A2d 888, 891-892). Each sovereignty is free to enforce its criminal laws as it deems appropriate.
The Full Faith and Credit Clause of the United States Constitution was not violated in this case.
Equity
While a strict enforcement of law does not mandate that the court honor a federal directive to run a sentence concurrently, some courts have exercised their equity power to effect the result in a particular case (Millard v Roach, supra, 631 A2d, at 1222 [DC Cir]; United States v Croft, 450 F2d 1094 [6th Cir], supra; Smith v Swope, 91 F2d 260 [9th Cir]; Kiendra v Hadden, 763 F2d 69 [2d Cir]; cf. Causey v Civiletti, 621 F2d 691, 694-695 [5th Cir]).[4] Other courts have held, under similar circumstances as present in this case, that there exists no equity *270 jurisdiction (Thomas v Whalen, supra, 962 F2d 358). Other courts have avoided the issue by stating that even if there were equity jurisdiction, the result would have been the same (Jake v Herschberger, supra, 173 F3d, at 1066-1067).
This court has strong reservations that it may exercise its equity powers in this CPLR article 78 proceeding. However, even if the court could so exercise, the result would be unchanged. In considering the equities in this case the court considers the following:
1. The Federal District Court ordered that the sentences run concurrently with each other, according to that court’s statements at the time of sentencing.
2. The defendant did not cause the current predicament. It is unfortunately unknown why the defendant was never delivered to New York for commencement of his sentence.
3. The defendant has undergone rehabilitation while in federal custody.
4. The defendant was released on bail and committed another crime as well as planning a second crime.
5. The defendant received the promised sentence despite having been arrested for another crime while out on bail. Generally, this court will not fulfill a plea promise where a crime has been committed while a defendant remains free on bail prior to sentencing.
6. The defendant was a second violent felon at the time of sentence, and now has a third felony (albeit nonviolent) conviction.
Balancing the equities, the court would have ordered that the sentences run consecutively with each other.
The special proceeding under CPLR article 78 is dismissed.
The court in its prior decision has denied CPL 440.20 and 430.10 motions.
[Portions of opinion omitted for purposes of publication.]

. The charges arose out of a shooting which left the victim a paraplegic. The defendant has consistently refused to discuss the shooting.

. For an interesting case where the different standards could lead to a different result, the reader’s attention is called to the case of Buggs v Crabtree (supra, 32 F Supp 2d 1215).

. Apparently, the New York State Department of Correctional Services and the New York City Department of Correction read Roche v Sizer (675 F2d 507 [2d Cir]) as contrary to this holding. Throughout the Roche decision the court uses the word “yield,” not lost, not forfeited and not ended. Yielding primary jurisdiction does not mean that had the primary jurisdiction asserted its rights that the secondary jurisdiction would not be mandated to return the defendant to the primary jurisdiction. It is interesting to note that in Zeldes v United States (Civ No. B-79-257 [D Conn, Apr. 15, 1980], affd 636 F2d 1206 [2d Cir], cert denied 450 US 983), the case relied upon in Roche, the Roche court cited Zeldes as saying (at 510), “The court found that the federal government had yielded primary jurisdiction because it had allowed petitioner to be imprisoned by New York authorities without challenging their jurisdiction.” (Emphasis supplied.) The clear implication is that had the Federal Government challenged the jurisdiction, it would have been successful. This implies the opposite of the position of the New York Depart *265 ments of Correction. This implies that while a primary jurisdiction yields its rights to immediate custody by releasing a person on bail, it can reobtain its rights if it challenges the nonprimary sovereignty’s jurisdiction.
Similarly, the use of the word “relinquish” in the dicta in footnote 2 of United States v Smith (812 F Supp 368, 370 n 2) does not mean lost, forfeited or ended. It means permitted the secondary jurisdiction to have temporary physical custody. However, as in Smith, any time the primary jurisdiction wishes to assert its rights, the primary jurisdiction could do so.
In Chambers v Holland (920 F Supp 618, 622) the court cited Roche and Smith and said: “Primary jurisdiction remains vested in the state which first arrested the defendant until that jurisdiction relinquishes its priority by, e.g., bail release, dismissal of the state charges, parole release, or expiration of the sentence. United States v. Warren, 610 F.2d 680, 684-85 (9th Cir. 1980). See also: Roche v. Sizer, 675 F.2d 507, 510 (2d Cir. 1982) (holding that federal court relinquished jurisdiction by releasing prisoner on bail). Primary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of the state obligation. Smith, 812 F.Supp. at 370, citing Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir. 1992).” (Emphasis supplied.) The court recognized that bail temporarily relinquishes primary jurisdiction, but primary jurisdiction only ends after satisfaction of the State obligation.
The position taken by both Departments of Correction is supported by Taylor v Reno (164 F3d 440, 445 [9th Cir]).

. The New York City Department of Correction argues that United States v Croft (450 F2d 1094, supra) and Del Guzzi v United States (980 F2d 1269) are irreconcilable. The court believes that Del Guzzi did not request equitable relief and therefore the opinion is strictly a law decision. What the *270 Del Guzzi court would have done if requested to exercise its equity jurisdiction is unknown.