OPINION OF THE COURT
Lawrence H. Ecker, J.
This proceeding raises an apparent issue of first impression involving petitioner Albert Muniz, a federal prisoner, who is serving both state and federal sentences. Muniz brings this special proceeding pursuant to CPLR articles 70 and 78 seeking relief from a New York State detainer warrant lodged against him at the federal correctional institution in Otisville, New York in Orange County where he is currently serving both sentences. He alleges a failure to act on the part of the respondents New York State Department of Correctional Services (DOCS) and New York State Division of Parole to afford him a parole release hearing regarding his state prison sentence. The novel issue is whether he is entitled to the parole release hearing under these circumstances.
Facts
The essential facts are not in dispute. On September 9, 1975, petitioner was sentenced in Supreme Court, New York County, to two indeterminate terms of imprisonment of 0 to 15 years for manslaughter in the first degree and attempted murder in the second degree, to run concurrently.
On September 10, 1976, petitioner was sentenced in Supreme Court, Kings County, to three indeterminate terms of imprisonment of 0 to 15, 0 to 7, and 0 to 7 years for assault in the first degree, assault in the second degree, and possession of a weapon, to run concurrently with each other and consecutively to the 1975 New York County sentences.
On November 5, 1979, the Appellate Division, Second Department, reversed the 1976 Kings County conviction on prosecutorial misconduct grounds. (People v Muniz, 72 AD2d 754 [2d Dept 1979].) He was apparently not retried on this charge.
On September 29, 1981, petitioner was granted parole on the 1975 New York County convictions.
*660 On September 18, 1984, petitioner was sentenced in Supreme Court, New York County, to an indeterminate term of 6 years to life imprisonment for criminal sale of a controlled substance in the second degree to run consecutively to the 1975 New York County sentences.
Petitioner became parole eligible on September 28, 1989. He appeared before the Parole Board in July 1989 for release consideration and was held 14 months. (Petition 1Í 4; petition, exhibit A.)
On January 3, 1990, petitioner was delivered into federal custody pursuant to a writ of habeas corpus ad prosequendum. (Petition, exhibit C.)
On April 30, 1991, petitioner was sentenced in United States District Court (SD NY) to sentences of 405 months (33 years, 9 months) and 7 years for continuing criminal enterprise and income tax evasion, to run concurrently. The judgment does not indicate whether the federal sentences are concurrent or consecutive to the previously imposed state sentences.
Although the January 1990 writ of habeas corpus ad prosequendum directed petitioner’s return to state custody following disposition of federal charges, a September 30, 1991 interdepartmental memorandum from Assistant United States Attorney Lawrence Byrne to the Bureau of Prisons (BOP) indicates, by agreement with state authorities, petitioner would remain in federal custody to serve his federal sentence before he is returned to state prison to complete his New York State sentences. (Petition, exhibit C.)
On February 7, 2002, petitioner corresponded with respondent Board of Parole alleging the Interstate Agreement on Detainers (IAD) had been violated by the failure of the federal authorities to return him to state custody, alleging he had been held an unreasonable period of 12 years without appearing before the respondent Parole Board, and requesting the state detainer be vacated as the respondent’s actions had relinquished jurisdiction over him.
On or about December 4, 2006, petitioner’s application for resentencing pursuant to the 2005 Drug Law Reform Act was denied by Supreme Court, New York County, upon the grounds he was not more than three years from being eligible for parole. On appeal, the Appellate Division, First Department, in affirming, noted at the time of his resentencing motion, his next New York parole eligibility date was November 28, 2008. The court stated,
*661 “Although as a practical matter defendant will not be considered for parole until 2020, when he is due to complete his federal sentence, that fact does not expand his right to be resentenced. It is undisputed that without the federal incarceration defendant would have been ineligible for resentencing because he would not have been more than three years from parole eligibility.” (People v Muniz, 61 AD3d 431 [1st Dept 2009].)
Petitioner has remained in federal custody for the past 22 years since being delivered into federal custody in January 1990. The projected release date on his federal sentence is October 18, 2020. (Petition, exhibit E.)
Arguments
Petitioner argues that respondents have violated petitioner’s statutory and constitutional rights by not taking him back into state custody following disposition on the federal charges. He contends such actions constitute an unauthorized interruption of the 6 years to life sentence (CPL 430.10) and a violation of the provisions of the LAD which permit only temporary custody for prosecution purposes and return to the sending state at the earliest practicable time (CPL 580.20, art V [d], [e]). Respondents’ actions have also adversely affected his security clearance in federal prison and deny him any opportunity to participate in therapeutic and educational programs that require minimum security clearance, such as work release and halfway house programs. Lastly, petitioner states he has been repeatedly denied the right to personally appear before the respondent Board for parole release consideration. (Executive Law § 259-i [2] [a].)
Based upon these claimed violations, petitioner seeks the following relief: (1) a writ of habeas corpus should be issued ordering respondents to remove the detainer and cease and desist any further efforts to confine petitioner based on the 1984 sentence; (2) alternatively, a writ of mandamus should be issued ordering respondents to remove the sentence detainer lodged against petitioner, and that he be placed on state parole; (3) alternatively, an order should be issued that petitioner be transferred back into state custody until paroled to federal custody to complete the federal sentence.
Respondents counter with the following objections in point of law:
*662 (1) Petitioner has failed to supply sufficient facts or to attach copies of the sentence and commitment orders, or explained his failure to do so (CPLR 7002 [c] [1]);
(2) The writ of habeas corpus must be denied as petitioner is not entitled to immediate release; a writ of habeas corpus is only available where the allegations in the petition, if found to be true, would entitle petitioner to immediate release. Since petitioner concedes he is serving a federal sentence until October 2020, he is not entitled to habeas relief; and
(3) Respondents’ determination was made in accordance with applicable law and is neither arbitrary nor capricious.
As a defense, respondents contend petitioner’s claims are without merit because they fail to take into account the requirements of primary jurisdiction. When a defendant receives a combination of state and federal sentences, primary jurisdiction determines which jurisdiction has the right to imprison the defendant to serve its sentence first. Here, it is noted, New York State has primary jurisdiction, as it arrested defendant first and was the last state to take defendant into custody while hé was at liberty, and not release him on bail or recognizance. Allowing another jurisdiction to assume temporary custody of the defendant does not shift primary jurisdiction to the jurisdiction that takes temporary custody of the defendant. Thus, while respondents agree they waived primary jurisdiction by agreement to permit petitioner to serve his federal sentence first, they did not waive the State’s jurisdiction over petitioner’s 1975 and 1984 sentences.
As to petitioner’s allegations regarding an IAD violation, respondents counter the federal government obtained custody of petitioner by a writ of habeas corpus ad prosequendum, not pursuant to the Interstate Agreement on Detainers. Accordingly, respondents submit the IAD is meritless. (Answer and return, exhibit 1, at 4.)
As to petitioner’s claim regarding illegal interruption of sentence, respondents deny any interruption. They assert petitioner’s 1975 and 1984 New York sentences have continued to run the entire time he has been in federal custody, thereby resolving the issue of concurrency with the federal sentences. (Answer and return, exhibit 1, at 4.) Accordingly, it appears that the 1975 15-year sentences have long ago been satisfied, and that petitioner is solely subject to the 6 years to life sentence on which he has served over 28 years.
*663 Discussion
Initially, there is no dispute that petitioner is not entitled to immediate release. Accordingly, the court will consider this proceeding as an article 78 proceeding and address the merits. (CPLR 103 [c]; People ex rel. Howard v Yelich, 87 AD3d 772 [3d Dept 2011]; People ex rel. Catts v Haggett, 67 AD3d 1315, 1316 [3d Dept 2009]; People ex rel. Berman v Artus, 63 AD3d 1436 [3d Dept 2009].) The failure to attach copies of the mandate by which petitioner is held is thereby not fatal. In fact, copies of all the state and federal sentence commitments have been provided by the parties.
Turning to the merits, as conceded by DOCS, an agency within the executive branch of state government, it agreed to yield primary jurisdiction over the petitioner to the Federal Bureau of Prisons, an agency within the executive branch of the federal government.* Respondents rely on Shumate v United States (893 F Supp 137 [ND NY 1995]) in which defendant was first arrested by state authorities in Schenectady County, New York. He was thereafter produced in federal court by a writ of habeas corpus ad prosequendum. After intensive plea negotiations and agreement, he pleaded guilty to federal and state charges. He received a 204-month sentence in federal court and a 15-years-to-life sentence in state court. Both state and federal pleas were negotiated in coordination with each other, and both federal and state courts sentenced petitioner aware of the sentences imposed or to be imposed by the other sovereign. The agreement called for petitioner to serve concurrent sentences, he would first serve his federal sentence in a federal facility, and upon satisfaction of the federal sentence, he would be transferred to a state prison to serve the remainder, if any, of his concurrent New York sentence.
When the Federal BOP refused to recognize New York State’s express waiver of its primary jurisdiction, the District Court granted petitioner’s request and ordered the BOP to assume custody of petitioner for service of his federal sentence. It held that
“[d] ©termination of priority of custody and service of sentence between state and federal sovereigns is *664 a matter of comity to be resolved by the executive branches of the two sovereigns. Normally the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration. However, the sovereign with priority of jurisdiction . . . may elect under the doctrine of comity to relinquish it to another sovereign. This discretionary election is an executive, and not a judicial function.” (Id. at 141.)
This court agrees. So long as the agreement between the sovereigns does not operate to interrupt the state sentences petitioner was serving at the time he was sentenced in federal court, and for which he is receiving state credit, he lacks standing to challenge the place where he will initially serve the sentences.
However, petitioner also alleges a repeated and systematic violation regarding his statutory right to be considered for parole by the respondent Board of Parole. Respondents do not deny that since 1990, for over 21 years, petitioner has been denied an appearance and personal interview by the Board of Parole at least once every 24 months as required by Executive Law § 259-i (2) (a). In fact, petitioner last appeared before the Board of Parole in July 1989.
Respondents dismiss this claim, arguing that a state court lacks jurisdiction to order a federal agency, the BOl^ to return him to DOCS custody for a Parole Board appearance. (De Simone aff, exhibit 1, at 5.) Notwithstanding, they assert the unqualified right to enforce a sentence detainer against petitioner while in federal custody while denying his right to a timely parole release hearing.
This is contrary to the Executive Law governing discretionary release which provides:
“At least one month prior to the expiration of the minimum period or periods of imprisonment fixed by the court or board, a member or members as determined by the rules of the board shall personally interview an inmate serving an indeterminate sentence and determine whether he should be paroled at the expiration of the minimum period or periods in accordance with the guidelines adopted pursuant to subdivision four of section two hundred fifty-nine-c. If parole is not granted upon such review, the inmate shall be informed in writing within two weeks of such appearance of the factors *665 and reasons for such denial of parole. Such reasons shall be given in detail and not in conclusory terms. The board shall specify a date not more than twenty-four months from such determination for reconsideration, and the procedures to be followed upon reconsideration shall be the same.” (Executive Law § 259-i [2] [a].)
Similarly, the Division of Parole’s rules and regulations state as follows:
“(a) Each inmate shall be scheduled for a parole release interview at least one month prior to the expiration of the minimum period of imprisonment, whether fixed by the court or the Board of Parole, or upon such reconsideration date as has been fixed by the Board of Parole.
“(b) The parole release interview shall be conducted by a panel of at least two members of the Board of Parole.” (9 NYCRR 8002.2.)
The above requirement that the Board of Parole conduct a parole release hearing, including a personal interview, contains no exception for an inmate, such as petitioner, who is constructively serving such sentence in a facility other than a New York State correctional facility.
It is a well-settled principle of statutory construction that “[t]he Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) Indeed, the Court of Appeals has stated that absent ambiguity, the courts are not free to legislate and if any unsought consequences result, the Legislature is best suited to evaluate and resolve them. (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 107 [1997].)
In statutory contrast, parolees who face parole violation hearings but are “detained in another state pursuant to such warrant” do not enjoy an unqualified right to a parole revocation hearing (Executive Law § 259-i [3] [a] [iii]). The parole statute specifically exempts such alleged violators who are detained in another state from being considered within the convenience and practical control of the Board until the warrant is deemed to be executed. (Executive Law § 259-i [3] [a] [iii]; People ex rel. Matthews v New York State Div. of Parole, 95 NY2d 640, 645 [2001].)
Here, petitioner is confined in a federal facility in Otisville, Orange County, New York only a short distance from Otisville *666 Correctional Facility, a state prison where the Board of Parole conducts parole release hearings on a regular basis. Respondents have made no showing that petitioner is not subject to their convenience and practical control, so as to preclude his being afforded a parole release hearing as required by law. Under these circumstances, fairness, reason, and law require the petition be granted and the State be directed to do what it is legally obligated to do by the clear and unambiguous language of Executive Law § 259-i (2) (a) and 9 NYCRR 8002.2.
In view of the foregoing, it is hereby ordered and declared that petitioner’s 1975 sentence under New York County indictment No. 1468/73 and 1984 sentence under New York County indictment No. 8667/83 shall not be interrupted, but shall continue to run while he is in federal custody on the 1991 federal sentences under 90 CR 00017-01; and it is further ordered that respondents shall take all necessary and reasonable steps to afford petitioner a parole release hearing consistent with the requirements of Executive Law § 259-i (2) (a), said hearing to be conducted within 30 days of the service of a copy of this order with notice of entry. If parole is not granted following a hearing, respondents shall continue to reconsider him for parole not more than every 24 months as required by law.

 No waiver document signed by the State of New York has been provided in this proceeding, although the State’s answer and return reaffirms the waiver by reference to the September 30, 1991 interdepartmental memorandum from Assistant United States Attorney Byrne to the Bureau of Prisons. (De Simone aff, exhibit 1, at 3.)